United States Court of Appeals
Fifth Circuit

**F I L E D**

**June 25, 2004**

Charles R. Fulbruge III
Clerk

IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

_____

No. 03-10803

_____

AHMED P. RACHID,

Plaintiff - Appellant,

versus

JACK IN THE BOX, INC.,

Defendant - Appellee.

_____

Appeal from the United States District Court
for the Northern District of Texas

_____

Before HIGGINBOTHAM, DENNIS, and CLEMENT, Circuit Judges.

EDITH BROWN CLEMENT, Circuit Judge:

Ahmed P. Rachid ("Rachid") filed an age discrimination claim under the Age
Discrimination in Employment Act ("ADEA"), 29 U.S.C. §§ 621-34, alleging that he was
terminated from his managerial position at Jack In The Box, Inc. ("JIB"). Because Rachid
established a prima facie case and because issues of material fact concerning JIB's proffered
reason for terminating Rachid are disputed, summary judgment was improper and this

case is REVERSED and REMANDED.

## I.  FACTS AND PROCEEDINGS

Rachid was employed by JIB from October 1995 to February 2001.  Patrick Powers ("Powers") became Rachid's supervisor in September 1999.  Rachid managed two restaurants, and shared managerial duties at one of the restaurants with Khalil Haidar ("Haidar").  Powers repeatedly criticized Rachid, and, according to both Rachid and Haidar, made disparaging comments about Rachid's age.  Rachid, who was 52 years old, reported these comments to JIB's human resources department, and even requested a transfer because he feared that Powers sought to fire him because of his age.  A transfer was never approved and Rachid was fired, according to JIB, for failing to follow policies related to recording employee time.

The parties sharply join issue over whether Rachid violated company policy.  On June 15, 2000, Powers sent the following email to managers of JIB restaurants:

> Each week I down load [sic] the "punch changes" at each store for the prior week. I am concerned about the increased number of "punch changes" that are related to BREAKS.  Let me make clear if anyone alters an employee's hours to save labor, THEY [sic] ARE BREAKING THE LAW!  This is the type of offense that I have no ability to help an individual.  Employees must punch out for breaks on there [sic] own, M[anagers-In-Charge] need to verify that each employee punched out at the clock.  If an employee fails to punch out at the clock they [sic] are to be written up on a P108 [disciplinary form].  NO MANAGER IS TO GO BACK AND DO A PUNCH CHANGE WITHOUT A SIGNED P108 FOR PROOF!  The P108 needs to be kept in the employee file.  If the employee contests their [sic] hours and there are punch changes without a P108 for back-up documentation, the manager is putting their [sic] job at risk.  It becomes a case of "he said/she said" and the manager has no proof that they [sic] didn't "illegally alter" the time clock.  The P108 is the only protection you have against this kind of allegation.
> Remember: "very few people have ever been fired for missing a number, but all

2

that get caught reporting a false number will always be fired!"  I cannot help you out of this kind of problem.

The parties disputed whether this email sent by Powers represents JIB's company policy.[1]

One of JIB's human resources employees, Kellie Teal-Guess ("Teal-Guess"), investigated several "punch changes" entered for employees at restaurants that Rachid managed.  Though Rachid disputes whether this investigation revealed any time-card alterations made by Rachid,[2] he concedes in his deposition that he occasionally changed time-cards when employees took breaks, and that he did not fill out P108 forms for all of those changes.  Without further investigation, Powers terminated Rachid immediately upon learning that he had altered time-cards without completing P108 forms.  Rachid's replacement was 47 years old.

Rachid filed an EEOC charge complaining of age discrimination under the ADEA, acquired a Right to Sue letter, and filed suit.  The district court granted summary judgment in favor of JIB and dismissed Rachid's claim.  Rachid timely appeals.

## II. STANDARD OF REVIEW

---

[1] JIB's Employee Handbook directs employees in the following manner: "To make sure there is agreement on what hours you worked, your Manager will post an Hours Report at the end of each pay period for employees to check.  If you don't agree with your hours on the report, let your Manager know immediately."

[2] Three of those employees reported alterations in their time-cards.  Apparently, none of the employees alleged that Rachid himself (as opposed to another manager) altered his time-card during the period under investigation by Teal-Guess.  Teal-Guess informed Powers that certain employees in restaurants where Rachid was a manager had improper deletions of time.  Teal-Guess noted that it was Powers's responsibility to determine whether Rachid (or another manager) had made the improper changes.

This Court reviews a grant of summary judgment de novo, and applies the same standard as the district court. Travelers Cas. & Sur. Co. of Am. v. Baptist Health Sys., 313 F.3d 295, 297 (5th Cir. 2002). District courts properly grant summary judgment if, viewing the facts in the light most favorable to the nonmovant, the movant shows that there is no genuine issue of material fact and that the movant is entitled to judgment as a matter of law. FED. R. CIV. P. 56(c).

## III. DISCUSSION

A. Proper legal standard for an ADEA claim.

It appears that the district court applied the McDonnell Douglas approach in analyzing Rachid's claim. See McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973). The district court's opinion states that Rachid did not establish a prima facie case, and later notes that "nothing in the record suggests that J[IB]'s basis for terminating Rachid was a pretext." The term "pretext" strongly suggests that the district court engaged in a McDonnell Douglas burden shifting analysis.[3] See McDonnell Douglas, 411 U.S. at 804-05. It is disputed, however, whether this is the proper legal framework.

(1) Age discrimination under the ADEA pre-Desert Palace.[4]

---

[3] Under the McDonnell Douglas burden shifting approach: the plaintiff must establish a prima facie case of discrimination; if the plaintiff meets that burden, the defendant must produce a legitimate, non-discriminatory reason for its decision to terminate the plaintiff; if the defendant meets its burden of production, the plaintiff then has the opportunity to demonstrate that the defendant's proffered reason for termination is merely pretextual. West v. Nabors Drilling USA, Inc., 330 F.3d 379, 383-85 (5th Cir. 2003).

[4] Desert Palace, Inc. v. Costa, 123 S. Ct. 2148 (2003).

4

Under the ADEA, "[i]t shall be unlawful for an employer . . . to discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age." 29 U.S.C. § 623(a)(1). "When a plaintiff alleges disparate treatment, liability depends on whether the protected trait (under the ADEA, age) actually motivated the employer's decision." Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 141 (2000) (citing Hazen Paper Co. v. Biggins, 507 U.S. 604, 610 (1993)). To demonstrate age discrimination a "plaintiff must show that '(1) he was discharged; (2) he was qualified for the position; (3) he was within the protected class at the time of discharge; and (4) he was either i) replaced by someone outside the protected class, ii) replaced by someone younger, or iii) otherwise discharged because of his age.'" Palasota v. Haggar Clothing Co., 342 F.3d 569, 576 (5th Cir. 2003) (quoting Bodenheimer v. PPG Indus., Inc., 5 F.3d 955, 957 (5th Cir. 1993)). That is, regardless of how much younger his replacement is, a plaintiff in the protected class[5] may still establish a prima facie case by producing evidence that he was "discharged because of his age." Palasota, 342 F.3d at 576 (quotations omitted).

A plaintiff can demonstrate age discrimination in two ways, either through:

> direct evidence or by an indirect or inferential method of proof. Discrimination can be shown indirectly by following the "pretext" method of proof set out in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973). . . .
> If, however, plaintiff produces direct evidence of discrimination, the McDonnell Douglas test is "inapplicable." The Price Waterhouse [v. Hopkins, 490 U.S. 228 (1989)], mixed-motives theory of discrimination comes into play where

---

[5] ADEA coverage extends to "[i]ndividuals at least 40 years of age." 29 U.S.C. § 631(a).

direct evidence of discrimination is presented, but the employer asserts that the same adverse employment decision would have been made regardless of discrimination. Although Price Waterhouse can be characterized as a method to prove discrimination, the mixed-motives theory is probably best viewed as a defense for an employer. See Price Waterhouse, 490 U.S. at 246 ("[T]he employer's burden is most appropriately deemed an affirmative defense: the plaintiff must persuade the factfinder on one point, and the employer, if it wishes to prevail, must persuade it on another.").

Unlike McDonnell Douglas, which simply involves a shifting of the burden of production, Price Waterhouse involves a shift of the burden of persuasion to the defendant. In other words, under Price Waterhouse, once a plaintiff presents direct evidence of discrimination, the burden of proof shifts to the employer to show that the same adverse employment decision would have been made regardless of discriminatory animus. If the employer fails to carry this burden, plaintiff prevails.
. . .

In summary, Price Waterhouse and McDonnell Douglas are alternative methodologies for proving discrimination.

Mooney v. Aramco Serv. Co., 54 F.3d 1207, 1216-17 & n.11 (5th Cir. 1995) (quotations and citations omitted).

One district court in this Circuit recently described the mixed-motives analysis. "A mixed-motives case arises when an employment decision is based on a mixture of legitimate and illegitimate motives. . . . If the employee proves the unlawful reason was a motivating factor, the employer must demonstrate that it would have taken the same action in the absence of the impermissible motivating factor." Louis v. E. Baton Rouge Parish Sch. Bd., No. 01-493-B-M3, 2003 WL 23281538, at *2-3 (M.D. La. Dec. 19, 2003); see also Medlock v. Ortho Biotech, Inc., 164 F.3d 545, 553 (10th Cir. 1999) (noting that a mixed-motives analysis applies "where the evidence is sufficient to allow a trier to find both forbidden and permissible motives.") (quotations and citations omitted). Whereas under the pretext prong of the McDonnell Douglas analysis, the plaintiff aims to prove that

discriminatory motive was the determinative basis for his termination, under the mixed-motives framework the plaintiff can recover by demonstrating that the protected characteristic (under the ADEA, age) was a motivating factor in the employment decision. See id.; Mooney, 54 F.3d at 1216-17.

The parties contest whether Desert Palace, Inc. v. Costa, 123 S. Ct. 2148 (2003), alters the analysis by allowing a plaintiff to proceed with a mixed-motives approach in a case where there is not direct evidence[6] of discrimination.

(2)     Mixed-motives analysis is available for ADEA claims.

Rachid argues that this case should be analyzed under the mixed-motives analysis described in Price Waterhouse and, more recently, in Desert Palace, Inc. v. Costa, 123 S. Ct. 2148 (2003). JIB maintains that the mixed-motives analysis is relevant only where there is direct evidence of discrimination, and that because there is no direct evidence here, the McDonnell Douglas approach governs.

In Desert Place, the Supreme Court unanimously held that in the context of Title VII, as amended by Congress in 1991, "direct evidence of discrimination is not required in mixed-motive[s] cases . . . ." 123 S. Ct. at 2155. See also Stegall v. Citadel Broad. Co., 350 F.3d 1061, 1066-67 (9th Cir. 2003) (applying Desert Palace at the summary judgment stage to Title VII and state law discrimination claims, and analyzing the plaintiff's case under

_____

[6] "Direct evidence is evidence that, if believed, proves the fact of discriminatory animus without inference or presumption." Sandstad v. CB Richard Ellis, Inc., 309 F.3d 893, 897 (5th Cir. 2002). Although some of the evidence in the case sub judice might qualify as direct evidence, Rachid does not argue that there was direct evidence of discrimination.

both the mixed-motives and the pretext theories). As the district court in Louis observed, "[b]ecause the direct evidence requirement has been removed from mixed-motive[s] cases, it is now harder to draw a distinction between McDonnell Douglas and mixed-motive[s] cases." Louis, 2003 WL 23281538, at *3. This Court has not yet addressed whether Desert Palace alters the Price Waterhouse and McDonnell Douglas analyses.[7]

We must first decide whether the mixed-motives analysis discussed in Desert Palace in the context of a Title VII claim is equally applicable in the ADEA context. "[T]he starting point for our analysis is the statutory text." Desert Palace, 123 S. Ct. at 2153. The ADEA states that "[i]t shall be unlawful for an employer . . . to discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age." 29 U.S.C. § 623(a) (emphasis added). Title VII similarly prohibits discrimination "because of" a protected characteristic. 42 U.S.C. § 2000e-2(a) (West 2004); see also Smith v. City of Jackson, Miss., 351 F.3d 183, 188-190 (5th Cir. 2003) (discussing the similarities and differences of Title VII and the ADEA and noting that the "core sections [of the two statutes] . . . overlap[ ] almost identically . . . . This is no coincidence; the prohibitions of the ADEA were derived in haec verba from Title VII.") (citations and quotations omitted). In Desert Palace the Supreme Court applied the mixed-motives analysis because, "[o]n its

_____

[7] Only one prior opinion of this Court, which was unpublished, cites to Desert Palace, and it does not address whether Desert Palace applies to ADEA claims. See Read v. BT Alex Brown Inc., No. 02-10191, 2003 WL 21754966, at *2 (5th Cir. July 30, 2003) (unpublished opinion).

face, [Title VII] does not mention, much less require, that a plaintiff make a heightened showing through direct evidence." Desert Palace, 123 S. Ct. at 2153.

Given that the language of the relevant provision of the ADEA is similarly silent as to the heightened direct evidence standard,[8] and the presence of heightened pleading requirements in other statutes,[9] we hold that direct evidence of discrimination is not

_____

[8] In response to Price Waterhouse v. Hopkins, 490 U.S. 228, 241 (1989), Title VII was amended in 1991 specifically "to eliminate the employer's ability to escape liability in Title VII mixed-motive[s] cases by proving that it would have made the same decision in the absence of the discriminatory motivation." Hill v. Lockheed Martin Logistics Mgmt., Inc., 354 F.3d 277, 284 (4th Cir. 2004); see 42 U.S.C. § 2000e-2(m) (providing that "an unlawful employment practice is established when the complaining party demonstrates that [a prohibited characteristic] was a motivating factor for any employment practice, even though other factors also motivated the practice"). The ADEA was not similarly amended, and Title VII's amendment was noted by the Supreme Court in Desert Palace. See Desert Palace, 123 S. Ct. at 2151. One circuit court assumed in dictum, without so holding, that this difference in statutory text is significant. See Hill v. Lockheed Martin Logistics Mgmt., Inc., 354 F.3d 277, 284-85 n.2 (4th Cir. 2004) (assuming in dictum, without deciding, that Desert Palace does not apply to ADEA claims, given the absence from that statute of an explicit mixed-motives provision like the one found in Title VII). Unlike Title VII which explicitly permits mixed-motives cases, the ADEA neither countenances nor prohibits the mixed-motives analysis. Because we base our holding on the absence of a heightened direct evidence requirement in the ADEA, we do not find the statute's silence on the mixed-motives analysis to be dispositive.

[9] See, e.g., 8 U.S.C. § 1158(a)(2)(B) (stating that an asylum application may not be filed unless an alien "demonstrates by clear and convincing evidence" that the application was filed within one year of the alien's arrival in the United States); 42 U.S.C. § 5851(b)(3)(D) (providing that "[r]elief may not be ordered" against an employer in retaliation cases involving whistleblowers under the Atomic Energy Act where the employer is able to "demonstrat[e] by clear and convincing evidence that it would have taken the same unfavorable personnel action in the absence of such behavior").

necessary to receive a mixed-motives analysis for an ADEA claim.[10] Accord Estades-Negroni v. Assoc. Corp. of N. Am., 345 F.3d 25, 31 (1st Cir. 2003) (holding that after Desert Palace the mixed-motives analysis applies in ADEA cases even without direct evidence of discrimination); Strauch v. Am. College of Surgeons, 301 F. Supp. 2d 839, 844 (N.D. Ill. 2004) ("Given the similarities in text and purpose between Title VII and ADEA, as well as the consistent trend of transferring the various proof methods and their accompanying rules from one statute to the other, this Court considers it likely that whatever doctrinal changes emerge as a result of Desert Palace in the Title VII context will be found equally applicable in the ADEA arena."); Thompson v. Proviso Township High Sch. Dist. 209, No. 01-C-5743, 2003 WL 21638808, at *8 (N.D. Ill. July 10, 2003).

This Court's recent holding in Smith v. City of Jackson, Miss., 351 F.3d 183 (5th Cir. 2003), cert. granted, 72 U.S.L.W. 3539 (U.S. Mar. 29, 2004) (No. 03-1160), is not to the contrary. In Smith this Court held that "the ADEA was not intended to remedy age-disparate effects that arise from the application of employment plans or practices that are not based on age." 351 F.3d at 187. We based our holding that disparate impact claims are not cognizable under the ADEA on "the ADEA's express exception permitting employer conduct based on 'reasonable factors other than age'—an exception absent from Title VII . . . ." Id. at 187-88 (quoting 29 U.S.C. § 623(f)(1)). Section 623(f)(1) provides that

---

[10] This Court's holding in Mooney, 54 F.3d at 1216-17, that direct evidence is required for a mixed-motives analysis has been overruled by the Supreme Court's interpretation of pleading requirements in Desert Palace.

10

it is not unlawful to make employment decisions "based on reasonable factors other than age . . . ." 29 U.S.C. § 623(f)(1) (emphasis added). Unlike a disparate impact claim, which may stem from neutral employment practices, Rachid's claim contains an allegation that the employment action was based—at least in part—on unlawful animus. Because the discrimination in Rachid's case allegedly occurred because of age, § 623(f)(1)'s safe-harbor for decisions based on factors "other than age" is inapposite.[11]

Our holding today that the mixed-motives analysis used in Title VII cases post-Desert Palace is equally applicable in ADEA represents a merging of the McDonnell Douglas and Price Waterhouse approaches. Under this integrated approach, called, for simplicity, the modified McDonnell Douglas approach: the plaintiff must still demonstrate a prima facie case of discrimination; the defendant then must articulate a legitimate, non-discriminatory reason for its decision to terminate the plaintiff; and, if the defendant meets its burden of production, "the plaintiff must then offer sufficient evidence to create a genuine issue of material fact 'either (1) that the defendant's reason is not true, but is instead a pretext for discrimination (pretext alternative); or (2) that the defendant's reason, while true, is only one of the reasons for its conduct, and another 'motivating factor' is the plaintiff's protected characteristic (mixed-motive[s] alternative).'" Rishel v. Nationwide

---

[11] We are focused here on the statutory text concerning "differentiation . . . based on reasonable factors other than age." See 29 U.S.C. § 623(f)(1). This analysis, of course, does not affect the interpretation of § 623(f)(1)'s previous phrase which provides that an employment action based on age is not unlawful "where age is a bona fide occupational qualification reasonably necessary to the normal operation of the particular business." See id.

Mut. Ins. Co., 297 F. Supp. 2d 854, 865 (M.D.N.C. 2003) (noting that courts need "only modify the final stage of the McDonnell Douglas scheme to accommodate Desert Palace, by framing the final stage 'in terms of whether the plaintiff can meet his or her 'ultimate burden' to prove intentional discrimination, rather than in terms of whether the plaintiff can prove 'pretext'") (citing and quoting Dunbar v. Pepsi-Cola Gen. Bottlers of Iowa, Inc., 285 F. Supp. 2d 1180, 1197-98 (N.D. Iowa 2003)). If a plaintiff demonstrates that age was a motivating factor in the employment decision, it then falls to the defendant to prove "that the same adverse employment decision would have been made regardless of discriminatory animus. If the employer fails to carry this burden, plaintiff prevails." Mooney, 54 F.3d at 1217. Accord Louis, 2003 WL 23281538, at *2-3 (noting that to defeat a mixed-motives claim once a plaintiff shows that the prohibited characteristic was a motivating factor, the defendant must demonstrate that "it would have taken the same action in the absence of the impermissible motivating factor.").

B.      Rachid's claim.

We now turn to whether Rachid's claim survives summary judgment under the modified McDonnell Douglas approach detailed above.

(1)      Rachid established a prima facie case.

JIB essentially concedes that Rachid satisfies the first three factors necessary for a prima facie case. Rachid argues that he demonstrated the fourth factor by showing that: (1) his replacement was five years younger; (2) he long suspected that Powers was going to fire him because of his age and he voiced these concerns to human resources; and (3)

12

Powers made ageist comments to and about Rachid.

The parties spend considerable effort contesting whether an age difference of five years is "significant" or "substantial" under O'Connor v. Consolidated Coin, 517 U.S. 308, 313 (1996) (holding that merely being replaced by someone outside the protected class is not sufficient to establish a prima facie case; rather, an employee demonstrates an inference of age discrimination when he is replaced by an employee "significantly" younger).[12] While this is a close question, we need not reach it because Rachid's other evidence easily establishes a prima facie case.

Evidence in the record demonstrates that Powers repeatedly made ageist comments to and about Rachid. In his deposition Rachid notes that, prior to his termination, he reported to human resources that Powers was harassing him about his age. Haidar testified that Powers suggested that Rachid's absence from a meeting was due to the fact that "he's probably in bed or he's sleeping by [now] because of his age . . . ." Such evidence of discrimination easily establishes a prime facie case that Rachid was "discharged because of his age." See Palasota, 342 F.3d at 576 (quotations omitted).

(2)     Material issues of fact are disputed, making summary judgment inappropriate.

JIB argues that it had a non-discriminatory reason for firing Rachid—i.e., Rachid's

---

[12] Compare Bienkowski v. American Airlines, Inc., 851 F.2d 1503, 1506 (5th Cir. 1988) (noting, pre-O'Connor, that a five year age differential "does not legally preclude the possibility of discrimination against [the plaintiff]" and that "it is a close question whether he established a prima facie case"), with Grosjean v. First Energy Corp., 349 F.3d 332, 336-40 (6th Cir. 2003) (holding that "in the absence of direct evidence that the employer considered age to be significant, an age difference of six years or less between an employee and a replacement is not significant").

failure to follow company policy regarding altering subordinates' time-sheets without documentation. JIB notes that "since 1999, the Company has terminated at least 11 other employees [including some of whom were substantially younger than Rachid] in the same region for violating the Company's time[-]sheet policy."

While violating a non-discriminatory company policy is adequate grounds for termination, two fact issues remain: (1) Rachid claims that Powers's email did not reflect JIB's company policy; and (2) he claims that, based on his understanding of the policy, he did not violate the policy. Rachid also argues that JIB's assertion that other employees were terminated for violating the policy is inapposite here because none of those employees were fired by Powers, nor were any of those employees fired for violating the specific time-card policy stated in Powers's email.

(a)     Company policy concerning time-card alterations is unclear.

Rachid claims that "Company Policy said nothing about the Manager signing a P108 Discipline Slip." Though JIB argues that a company policy was violated, it cites to nothing other than Powers's email. Rachid notes that the Employee Handbook only requires that if an employee "do[esn't] agree with [his] hours on the [report at the end of each pay period, he must let his] Manager know immediately."

JIB's argument that other employees were fired for violating a time-card policy does not resolve this issue. JIB issued separation notices to employees discharged for "employees' hours deletions," but none of those notices references failure to complete P108 forms. Additionally, all of those notices assume that employee hours were unlawfully

14

deleted. In the instant case, Rachid claims that he only made lawful deletions (i.e., deletions when employees failed to punch out for breaks). The basis of Rachid's termination by Powers seems to have had less to do with whether the deletions were accurate than with whether Rachid had completed P108 forms when he made the deletions.[13] The fact that some employees were terminated for "employees' hours deletions" does suggest that JIB had a policy on this matter, but it does not address the contours of that policy.

Furthermore, the other employees were terminated by other managers, mitigating the relevance of their terminations to the question of whether Powers unlawfully discriminated against Rachid. "This court and others have held that testimony from former employees who had different supervisors than the plaintiff, who worked in different parts of the employer's company, or whose terminations were removed in time from the plaintiff's termination cannot be probative of whether age was a determinative factor in the plaintiff's discharge." Wyvill v. United Co. Life Ins. Co., 212 F.3d 296, 302 (5th Cir. 2000). JIB does not appear to have produced any evidence that other managers were fired by Powers (or by anyone else) merely for failing to complete P108 forms in situations where: (1) those managers altered employee hours; and (2) the employees did not—as required by the Employee Handbook—contest the alterations. Therefore, a genuine issue of material fact exists whether Powers's email describes JIB's company policy.

---

[13] Powers fired Rachid immediately after Rachid admitted to making some alterations without completing P108 forms. Powers did not make any investigation to determine whether those deletions were accurate.

15

(b)     It is uncertain whether Rachid violated the policy stated in Powers's email.

Powers's email states:

If an employee fails to punch out at the clock they [sic] are to be written up on a P108 [disciplinary form].  NO MANAGER IS TO GO BACK AND DO A PUNCH CHANGE WITHOUT A SIGNED P108 FOR PROOF!  The P108 needs to be kept in the employee file.  If the employee contests their [sic] hours and there are punch changes without a P108 for back-up documentation, the manager is putting their [sic] job at risk.

Rachid argues that his and Haidar's understanding of Powers's email "was that, if the 'employee contests their [sic] hours' after the Manager made the change, the Manager was to write a P108 form."  Haidar testified that he did not think a P108 form was necessary unless an employee disputed changes made to the time-card.  According to Rachid's and Haidar's interpretation, a P108 was necessary only if, after an employee was notified of an alteration to his hours, he were still to contest it.  Therefore, according to Rachid, he never violated the directive as stated in Powers's email.  Of course, whether Rachid violated JIB's policy is a question of fact.

Even if JIB did have a policy (which seems likely), and even if that policy required P108 forms to be filled out in certain circumstances (which is uncertain), a factual question remains as to whether Rachid violated that policy by only completing P108s when an employee contested the alteration.

(c)     Summary judgment was improper.

Because issues of material fact are disputed, summary judgment in favor of JIB was unwarranted.  This Court's decision in Bienkowski v. American Airlines informs the

16

analysis of whether summary judgment was appropriate at this stage. See Bienkowski v. American Airlines, Inc., 851 F.2d 1503, 1506-07 (5th Cir. 1988). In Bienkowski, this Court faced a similar situation: the parties contested the quality of plaintiff's performance, and the plaintiff alleged that his supervisors made ageist comments. Id. Bienkowski alleged that his managers commented that he look "'sharp' if he was [sic] going to look for another job . . . [and] commented on his inability or willingness to 'adapt' to new systems in the department." Id. at 1507 n.4. This Court reversed the district court's grant of summary judgment in favor of the defendant, noting:

> Unlike the district court, we are unwilling to assume that indirect comments about his age and adaptability are not possibly probative of an unlawful discriminatory intent, given the parties' sharp disagreements over the operative facts of [plaintiff]'s performance. Moreover, live testimony will assist the necessary credibility choices in this case more effectively than printed affidavits.

Id. at 1507. Comments to look "sharp" and comments concerning an employee's willingness to "adapt" to new systems are rather nebulous, but they allowed Bienkowski to avoid summary judgment. The alleged ageist comments in the instant case are substantially more egregious. Similarly, in Palasota, this Court, in reversing a district court's grant of a judgment as a matter of law, explained, "[a]ge-related remarks 'are appropriately taken into account when analyzing the evidence . . . ,' even where the comment is not in the direct context of the termination and even if uttered by one other than the formal decision maker, provided that the individual is in a position to influence the decision." 342 F.3d at 578 (quoting Russell v. McKinney Hosp. Venture, 235 F.3d 219, 229 (5th Cir. 2000)).

In the case sub judice, Rachid presents far more evidence of age discrimination than was presented in Bienkowski. Rachid testified that Powers made numerous ageist comments—including one situation where Powers allegedly said: "[A]nd don't forget it, [Rachid], you're too old, too"—and Haidar supported Rachid's assertions that Powers continually made such comments. Rachid even spoke with human resources prior to his termination to express his fear that Powers would try to fire him because of his age. Despite JIB's focus on Teal-Guess's investigation and company policy, it was Powers who terminated Rachid, and it was Powers who repeatedly made ageist comments to and about Rachid. Such comments preclude summary judgment because a rational finder of fact could conclude that age played a role in Powers's decision to terminate Rachid.

## IV. CONCLUSION

For the forgoing reasons we hold that: Desert Palace modifies the McDonnell Douglas analysis in ADEA cases such that a plaintiff can proceed on a mixed-motives theory even without direct evidence of discrimination; Rachid established a prima facie case of discrimination; and disputed issues of material fact remain concerning JIB's proffered reason for terminating Rachid and concerning whether age was a factor in that decision. Therefore, the district court's summary judgment is REVERSED, and this case is REMANDED for further proceedings not inconsistent with this opinion.