United States Court of Appeals
Fifth Circuit

**F I L E D**

**January 5, 2007**

Charles R. Fulbruge III
Clerk

**IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT**

No. 06-20588
Summary Calendar

DAVID STINER,

Plaintiff-Appellant,

versus

IBM CORPORATION,

Defendant-Appellee.

Appeal from the United States District Court
for the Southern District of Texas
No. 4:05-CV-2007

Before JOLLY, DENNIS, and CLEMENT, Circuit Judges.

PER CURIAM:[*]

David Stiner ("Stiner") appeals the dismissal on summary judgment of his employment

discrimination claims against defendant IBM Corporation ("IBM"). We affirm.

**I. FACTS AND PROCEEDINGS**

Stiner, a black male, has worked for IBM from 1983 to the present. In July 2001, Stiner was

---

[*]Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

1

assigned to work as a Client Executive (a sales position) on the Texaco account, part of the Petroleum Cluster of IBM. In October 2001, Chevron and Texaco merged to form ChevronTexaco, and Stiner came to share the account for the newly-merged company with Shanaz Graham ("Graham"), a female of East Indian descent, who had been the Client Executive on the Chevron account. When IBM acquired the business consulting practice of PriceWaterhouseCoopers ("PWC") in 2002, it retained a PWC employee, Jim Ward ("Ward"), a white male, to work on the ChevronTexaco account due to PWC's previous relationship with ChevronTexaco. In January 2003, IBM determined that it would reduce staff in the Petroleum Cluster and assigned each sales team a quota that it needed to meet to avoid a staff reduction. The ChevronTexaco team missed its quota, and James Keenan ("Keenan"), the Client Managing Director of the Houston Petroleum Cluster, had to reduce personnel assigned to the account. Keenan determined that the account did not require the services of both Graham and Stiner, so he chose to retain only one of them. Keenan did not consider Ward for the reduction because Ward was qualified to move into another position where he could provide consulting services across several accounts.

Keenan ranked Stiner and Graham on a Staff Reduction Worksheet covering five skill areas, and Graham outscored Stiner on all five. Further, Graham had an engineering degree and better relationships with the highest-level executives at ChevronTexaco, in part due to the fact that the new firm's headquarters was nearer to her home in California, while Stiner lived and worked in Houston. Consequently, Keenan selected Graham to remain on the account. Stiner eventually found another position within IBM; his new position has a higher salary but does not allow him to earn commissions on his sales. Stiner's pay and benefits with IBM were never interrupted while he sought a new position.

2

In September 2004, Stiner filed an action with the Equal Employment Opportunity Commission ("EEOC") alleging that he was discriminated against based on his race. Stiner alleged 1) that he was removed from the ChevronTexaco account because of his race; and 2) that IBM did not assign him to another commissioned sales position because of his race. The EEOC issued a right-to-sue letter in March 2005, and Stiner then brought this suit, making the same two charges of discrimination and also including a number of allegedly discriminatory incidents that preceded the staff reduction.[1] IBM moved for summary judgment after discovery was complete, and the district court granted its motion, dismissing both of Stiner's claims. Stiner now appeals the district court's grant of summary judgment.

## II. STANDARD OF REVIEW

We review the district court's grant of summary judgment de novo. *Jones v. Comm'r*, 338 F.3d 463, 466 (5th Cir. 2003). Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c). We apply the same standard as the district court and "construe all facts and inferences in the light most favorable to the non-moving party." *Cooper Tire & Rubber Co. v. Farese*, 423 F.3d 446, 454 (5th Cir. 2005) (internal quotation omitted).

## III. DISCUSSION

A.     **The *McDonnell Douglas* framework**

Employment discrimination under Title VII can be established through either direct or

---

[1] Stiner conceded to the district court that any claims arising from these earlier incidents would be both untimely and unexhausted, but he points to them as evidence in connection with his other claims, which is how the district court regarded them.

circumstantial evidence. *Wallace v. Methodist Hosp. Sys.*, 271 F.3d 212, 219 (5th Cir. 2001). Stiner has offered no evidence of direct discrimination, and therefore his claim is properly analyzed under the familiar standard of *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). To prevail, a plaintiff must establish a *prima facie* case from which discrimination may be inferred. *Laxton v. Gap Inc.*, 333 F.3d 572, 578 (5th Cir. 2003). The burden then shifts to the defendant to articulate a non-discriminatory reason for the employee's termination. *Id.* If the defendant sustains its burden, "the plaintiff must then offer sufficient evidence to create a genuine issue of material fact" that either (1) the employer's reason is a pretext or (2) the employer's reason, while legitimate, is only one motive for the action, and discrimination based on a protected characteristic is another motive. *Rachid v. Jack in the Box, Inc.*, 376 F.3d 305, 312 (5th Cir. 2004). If mixed-motive is shown, the employer must then show that it would have taken the same action regardless of the discriminatory motive. *Id.* (addressing age-based claims).

**B.      Stiner's claims**

The district court proceeded past the *prima facie* stage of the analysis, and began its opinion by noting that IBM had proffered a non-discriminatory reason for removing Stiner from the ChevronTexaco account: one person needed to be removed and Graham was better qualified than Stiner. The district court then found that Stiner had not met his burden to show that this reason was pretextual or part of a mixed motive. In particular, the district court noted the absence of evidence in the record indicating that Stiner was "clearly better qualified" than Graham, and an abundance of

4

evidence supporting Keenan's selection of Graham.[2]  *See Price v. Fed. Express Corp.*, 283 F.3d 715, 723 (5th Cir. 2002) ("[A] showing that the unsuccessful employee was clearly better qualified is enough to prove that the employer's proffered reasons are pretextual.").

On appeal, Stiner does not challenge the district court's findings with regard to the evidence as between himself and Graham.  Instead, Stiner asserts 1) that the district court erred by improperly considering affidavit testimony that contradicted deposition testimony without acknowledging that the conflict created a question of fact for the jury; and 2) that the district court did not consider the evidence that it was Ward, and not Graham, to whom he was compared, and that Ward was less qualified than Stiner.

Stiner does not explain how the deposition testimony from Eddie Mayberry ("Mayberry"), an IBM human resources employee, is relevant.  At best, it shows that the record is not perfectly clear about which IBM employees were reassigned following the staff reduction, and where they went following the reduction.  Stiner does not allege that any of the employees named in the district court's findings or alluded to in Mayberry's deposition received positions for which he was better qualified.

Stiner also cites to deposition testimony indicating exactly the proposition for which the district court cited it, *i.e.*, that Stiner and Graham were the two salespeople in their unit, that IBM felt it could only retain one, and that it selected Graham.  Stiner asserts that this testimony is belied by the record because on the Employee Surplus Selection Worksheet it was noted that Ward lived

---

[2] The "clearly better qualified" standard for showing pretext by comparison to the preferred employee has survived the Supreme Court's recent rejection, in *Ash v. Tyson Foods, Inc.*, 126 S. Ct. 1195, 1197 (2006), of an alternative standard previously used by the Fifth Circuit.  *See Conner v. Hoechst Celanese Chem., Inc.*, No. 05-41487, 2006 WL 3431518, at *2 n.3 (5th Cir. Nov. 29, 2006).

in Houston and could thus "provide coverage locally." However, the reason for such an indication is clear: there was less need for an additional member of the sales team in Houston because Ward was there, whereas Graham was the only member of the team in California. The worksheet only bolsters IBM's proffered explanation for selecting Graham. Contrary to Stiner's assertion, while Ward's responsibilities changed following the reduction, there is no evidence he was ultimately "removed" from the account. Moreover, if Ward had been removed, it would undermine Stiner's argument that Ward somehow received more favorable treatment because of his race.

Stiner challenges the district court's conclusion that he had no evidence that he was not offered other commissioned sales positions because of his race. However, he points only to his own deposition testimony in support of this argument, and that testimony is extremely vague. It appears that Stiner felt that he could not obtain certain positions because his managers would sabotage his efforts, but he does not articulate a single example of this happening. Instead, he points to an instance in which he applied for a position in San Antonio, was told by the hiring employee he was qualified, and then the position was withdrawn and not filled by anyone. He does not present any evidence that the position was withdrawn because of his race, nor does he point to any caselaw suggesting that a position that goes unfilled can be the basis for a disparate treatment claim. He suggests that the fact that the position was withdrawn "supports an inference of discrimination," but he has no evidence indicating that he was even among the most qualified applicants for the position, such that he would have been selected for it had it not been withdrawn. The district court was justified in dismissing his claims.

## IV. CONCLUSION

Finding no error by the district court, we AFFIRM.

6