**United States Court of Appeals**
**Fifth Circuit**

**F I L E D**

**March 6, 2007**

Charles R. Fulbruge III
Clerk

**UNITED STATES COURT OF APPEALS**
**FIFTH CIRCUIT**

———————————

No. 06-10854

(Summary Calendar)

———————————

FRANK HORAK,

Plaintiff-Appellant,

versus

GLAZER'S WHOLESALE DRUG COMPANY, INC, doing business as Glazer Distributors,

Defendant-Appellee.

---

Appeal from the United States District Court
For the Northern District of Texas
USDC No. 3:05-CV-901

---

Before KING, HIGGINBOTHAM, and GARZA, Circuit Judges.

PER CURIAM:[*]

Frank Horak ("Horak") appeals from the district court's grant of summary judgment in favor

of his former employer, Glazer's Wholesale Drug Company, Inc. ("Glazer's"), on his claims of age

---

    [*]    Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not
be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R.
47.5.4.

discrimination in violation of the Age Discrimination in Employment Act, 29 U.S.C. §§ 621-634 ("ADEA"), and the Texas Commission on Human Rights Act, TEX. LABOR CODE ANN. §§ 21.001-21.556 ("TCHRA").  We affirm.

Horak's claims arise from the termination of his employment with Glazer's, a wholesale liquor distribution business.  Horak had been an employee of Longhorn Liquors ("Longhorn") for more than thirty years when Longhorn was acquired by Glazer's in November 2002.  At that time, Horak, age 57, was Longhorn's Executive Vice President of Sales and was earning an annual salary of $144,000, along with a $22,000 bonus.  After the acquisition, Glazer's hired all Longhorn employees who were interested in positions with Glazer's, including Horak.  Horak worked for Glazer's in an unspecified role until February 2003, when Glazer's created a key account manager position for him in the company's Mustang Spirits Division, which serviced the Dallas and Fort Worth areas.  Horak retained his salary and bonus structure.

Unlike the Mustang Division's other key account managers, Joe Duncan ("Duncan") and Cameron Young ("Young"), who were responsible for managing Glazer's relationships with specific chain accounts, Horak's day-to-day job duties were not specifically defined.  Instead, he reported to general sales manager Danny O'Donovan ("O'Donovan"), who assigned Horak a variety of tasks, including performing pricing surveys, advising Glazer's salespeople, and maintaining his (Horak's) long-standing relationships in the industry.  To keep himself and his supervisor, regional sales manager Tim McNamara ("McNamara"), apprised of Horak's day-to-day activities, O'Donovan asked Horak to prepare itineraries outlining the duties to which he would be attending each day.  It is undisputed that O'Donovan was satisfied with Horak's job performance.

During the fall of 2003, Glazer's senior management reviewed the company's financial

performance and became concerned about the profitability of its Texas operations. Although fourth quarter revenues had increased by more than twenty-five percent over the same period in 2002, profits had increased by only one percent. Hoping to achieve greater profitability, Glazer's tasked the president of its Texas operations, Ralph Townes ("Townes"), with exploring ways to lower the company's operating costs in Texas. Thus, in early 2004, Townes instructed the regional vice-presidents in Texas to review their respective workforces and identify positions that could be eliminated without negatively affecting operations or profitability. Skip Carleton ("Carleton"), who was the regional vice-president for North Texas, met with McNamara to review the workforce in the Mustang Division. McNamara reported that he believed Horak's position was nonessential and could be eliminated without impacting the Mustang Division's operations. Based on his discussions with McNamara, his understanding of Horak's job duties, and the fact that Horak's salary was more than twice that of the other Mustang Division key account managers and also exceeded the salaries of O'Donovan and McNamara, both of whom were Horak's superiors, Carleton recommended to Townes that Horak's position and two other management positions in Glazer's Dallas branch be eliminated.[1]

Because there was no other management position available for Horak in Glazer's North Texas division, Townes decided to terminate Horak's employment. On July 30, 2004, Townes and Glazer's director of human resources, Charles Harmount ("Harmount"), met with Horak to inform him that his position was being eliminated due to economic reasons. Horak was 59 years old at the time. Horak was offered a severance package, which he eventually refused, and his termination was

[1] The other management positions eliminated were a key account manager position in Glazer's Cactus Division, which was held by 48-year-old Mary Ellen Wilbur, and an event manager position in the Cactus Division, which was held by 32-year-old Coleen Mahoney Mowery.

processed on September 10, 2004. Upon Horak's termination, his job duties were redistributed among the other employees in the Mustang Division. No one was hired to replace Horak, nor were any other management positions added to the Mustang Division.

Horak subsequently brought this suit against Glazer's, alleging that he was wrongfully terminated on account of his age. Glazer's moved for summary judgment, which the district court granted upon finding that Horak had failed to establish a prima facie case of age discrimination and had failed to raise a genuine issue of material fact that Glazer's decision to terminate his employment was either a pretext for or motivated by age discrimination.

Horak argues that the district court erred in granting summary judgment for Glazer's. We review the district court's grant of summary judgment *de novo*, applying the same legal standard as the district court. *Rachid v. Jack in the Box, Inc.*, 376 F.3d 305, 308 (5th Cir. 2004). Summary judgment is appropriate when the evidence "show[s] that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED R. CIV. P. 56(c). We review all facts in the light most favorable to Horak. *Rachid*, 376 F.3d at 308.

The ADEA and the TCHRA prohibit employers from discharging or otherwise discriminating against any individual because of his or her age. *See McClaren v. Morrison Mgmt. Specialists, Inc.*, 420 F.3d 457, 461 (5th Cir. 2005). The familiar burden-shifting framework set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973) governs Horak's claims under both statutes. *Evans v. City of Houston*, 246 F.3d 344, 349 (5th Cir. 2001). Under this framework, Horak carries the initial burden of establishing a *prima facie* case of age discrimination. *Machinchick v. PB Power, Inc.*, 398 F.3d 345, 350 (5th Cir. 2005). If he succeeds, the burden shifts to Glazer's to provide a legitimate, nondiscriminatory reason for terminating Horak's employment. *Id.* If Glazer's satisfies

this burden, the burden shifts back to Horak to prove either that Glazer's proffered reason was not true but was instead a pretext for age discrimination, or that even if Glazer's reason is true, Horak's age was still a motivating factor for the termination. *Rachid*, 376 F.3d at 312.

Horak devotes a substantial portion of his brief to arguing that the district court erred in concluding that he had failed to establish a prima facie case of age discrimination. We need not address these arguments, however, because even assuming Horak can make out a prima facie case, the district court correctly concluded that Horak failed to rebut Glazer's legitimate, nondiscriminatory reason for his termination.

Glazer's states that the decision to terminate Horak's employment was made in connection with a state-wide review of the company's workforce in an effort to increase profitability. Horak's position was one of six positions eliminated in the Dallas branch and one of sixty-five positions eliminated state-wide. Horak does not dispute that a reduction in force ("RIF") can be a legitimate, non-discriminatory reason for terminating an employee, but he contends that Glazer's did not terminate his employment for economic reasons.

First, Horak attempts to cast doubt upon Glazer's assertion that it was concerned with profitability by arguing (1) that Horak's team met its "dollar volume" objective for the year preceding Horak's May 2004 performance review with Glazer's, realizing more than $87 million in revenues; (2) that in June 2003, Glazer's acquired a new company in Texas and hired 49 workers as part of that acquisition, which could have explained the minimal increase in profitability in the fourth quarter of 2003; and (3) that Glazer's acquired three other Texas companies and 250 of their employees between February 2004 and January 2005, which suggests that Glazer's was "healthy." None of this evidence, however, challenges Glazer's evidence that the company became concerned about the

lagging profitability of its Texas operations in the fourth quarter of 2003 and addressed that problem by eliminating Horak's and sixty-four other positions in a state-wide RIF. Neither the fact that the Glazer's was realizing significant revenues nor the fact that there was an explanation for Glazer's lagging fourth quarter profits (Glazer's acquisition of a new distributorship and its employees) calls into question the company's assertion that it conducted a RIF in response to profitability concerns.

Horak next attacks Glazer's decision-making process in selecting positions for elimination. He complains that Glazer's RIF was entirely subjective because the company did not develop an objective system of ranking and evaluating its employees in terms of their worth to the company or conduct a formal cost-benefit analysis before deciding which employees to terminate. Horak argues that Glazer's use of a subjective evaluation system permits the inference that his termination was pretextual. We disagree. Though it is true that Glazer's did not employ a formal cost-benefit analysis in deciding which positions to eliminate, that does not indicate that Glazer's based its termination decisions on subjective criteria. To the contrary, the undisputed evidence shows that Horak's position was selected for elimination based on two objective factors: (1) Horak's job duties largely overlapped with the job duties of the others in the Mustang Division; and (2) Horak's $144,000 salary was more than twice the salaries of the Mustang Division's two other key account managers, Duncan and Young, who were earning $64,000 and $66,500, respectively. But even if Glazer's decision-making process could be described as subjective in nature, "[t]he mere fact that an employer uses subjective criteria is not . . . sufficient evidence of pretext." *Manning v. Chevron Chem. Co., LLC*, 332 F.3d 874, 882 (5th Cir. 2003).

Horak also argues that Glazer's gave contradictory and inconsistent reasons for his termination. Specifically, Horak complains that Townes first told him that he was being let go

because "things weren't working out," but later said that he was being let go for "economic reasons." Glazer's CEO, Bennett Glazer, subsequently told Horak that he was let go because his position "[was]n't paying for itself." The summary judgment record reveals that there was nothing inconsistent about these explanations. Horak testified in his deposition that when he met with Townes and Harmount on July 30, 2004, Townes stated, "Things aren't working out. We're going to have to let you go." When Horak asked why, Townes stated, "Economic reasons." Townes similarly testified that he informed Horak during the meeting that his position was being eliminated due to economic reasons. Townes's explanation is entirely consistent with Bennett Glazer's understanding that Horak was terminated because his position was not paying for itself.[2]

Horak next contends that even if Glazer's explanation for his termination is not pretextual, his age was still a motivating factor in the termination decision.[3] In support of this assertion, Horak points to evidence of the following: (1) when he was terminated, his job duties were redistributed

---

[2] Horak also claims that Glazer's employee Don Pratt told him at some point that it was his understanding that Horak and another employee were only to be employed for a limited time after Glazer's acquisition of Longhorn, and Horak argues that this establishes that Glazer's has provided inconsistent explanations for his termination. We agree with the district court that Pratt's alleged statement does not give rise to an inference of age discrimination, given that (1) there is no evidence of Pratt's position within the company or of his involvement in the decision to terminate Horak's employment, and (2) nothing in the statement suggests that Horak's age had anything to do with the termination.

[3] Horak's argument that the district court erred in granting summary judgment on his mixed-motives theory because that theory was not addressed in Glazer's motion for summary judgment is without merit. This is not a case where the district court granted summary judgment on a ground that was not raised or addressed by the parties, *cf. John Deere Co. v. Am. Nat'l Bank of Ford*, 809 F.2d 1190, 1191-92 (5th Cir. 1987), nor is this a case where the moving party raised a new argument for the first time in its reply brief, *cf. Senior Unsecured Creditors' Comm. of First Republic Bank Corp. v. FDIC*, 749 F.Supp. 758, 772 (N.D.Tex.1990). Horak asserted the mixed-motives theory in his response brief as a basis for opposing Glazer's summary judgment motion, and Glazer's addressed the theory in its reply brief. Accordingly, the theory was properly before the district court.

among more than a dozen employees in the Mustang Division, whose ages ranged from 32 to 58; (2) the two key account managers whom Glazer's retained, Duncan (age 58) and Young (age 46), were both younger than him; (3) he was the only employee O'Donovan asked to complete daily itineraries; and (4) he was not considered for positions that became available at Glazer's following his termination. The summary judgment record also establishes, however, that Glazer's hired Horak when he was 57 years old; that no one at Glazer's ever made any negative age-related comments about Horak or anyone else; that O'Donovan was satisfied with Horak's job performance and asked Horak to prepare daily itineraries simply because Horak was the only key account manager whose day-to-day job duties were undefined; that Horak's salary was significantly higher than those of the Duncan and Young; that the Glazer's employees involved in the decision to eliminate Horak's position were in the same general age group as Horak; that the two other Dallas branch employees whose positions were eliminated were younger than Horak; that upon his termination, Horak's duties were absorbed by existing employees, many of whom performed those duties before Horak's arrival and most of whom were in their forties or fifties; that there were no management positions available for Horak at the time of his termination; and that Horak did not apply for another position with Glazer's after his termination. In light of these facts, and considering the summary judgment evidence as a whole, we agree with the district court that Horak has failed to raise so much as a genuine issue of fact as to whether his age was a motivating factor in Glazer's decision to eliminate his position.

Because Horak's evidence is insufficient to give rise to an inference that Glazer's reason for terminating his employment is a pretext for age discrimination or that age was a motivating factor in his discharge, the district court properly granted summary judgment to Glazer's.

We AFFIRM.