# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

**September 12, 2007**

Charles R. Fulbruge III
Clerk

No. 06-10483

DONNA EARLE

Plaintiff–Appellant

v.

ARAMARK CORPORATION

Defendant–Appellee

Appeal from the United States District Court
for the Northern District of Texas
3:03-CV-2960

Before DeMOSS, DENNIS, and OWEN, Circuit Judges.

PER CURIAM:[*]

Donna Earle was employed as a Director of Business Development (DBD) by Aramark from March 2000 to April 4, 2003.[1] She had previously been employed as a Vending Sales Director by Aramark. As a DBD, Earle reported

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

[1] Aramark Corporation disputes that it employed Earle and instead alleges that Earle was employed by Aramark Services, Inc., a subsidiary. The district court did not address this argument, and we assume arguendo that Aramark Corporation employed Earle without addressing the substantive merits of this allegation.

to the Vice President of Sales—Carson Irvine from 2000 to 2001 and David Vandenberg from 2001 until 2003.

Paul Carolan was named Regional Vice President in November 2000, and he collaborated with the DBDs, including Earle, on their sales. Earle alleges that Carolan sexually harassed her throughout her employment based on a number of comments and incidents. Earle met with Regional Human Resource Director Patricia Lamont and discussed her harassment complaints on October 11, 2002.

Earle alleges that during her employment she was discriminated against because of her age and sex on a number of occasions. Specifically, she claims that she was not provided administrative support; she did not receive access to appropriate training courses; she was subject to a more stringent standard than other DBDs; she was subjected to a career management process for low performance; Human Resources failed to investigate her harassment claims; and she was paid less than her male DBD counterparts.

Earle met with Vandenberg in 2002 to discuss her performance as a DBD. The two identified a variety of areas for improvement and evaluated her performance up to that point as needing improvement. Vandenberg then created a list of objectives for Earle to achieve in a development plan.

On April 4, 2003, Vandenberg and Vice President of Human Resources David Kahn terminated Earle's employment. Earle was replaced by Tom Schula. At the time of her discharge, Earle was 44 and Schula was 40. Earle filed a charge with the Equal Employment Opportunity Commission on September 5, 2003 alleging age and sex discrimination and retaliation.

Earle then sued Aramark in federal district court for a variety of claims including age discrimination, sex discrimination, retaliation, and sexual harassment. Aramark moved for summary judgment, arguing that Earle was actually employed by an Aramark subsidiary and alternatively that summary

judgment was appropriate on the merits of Earle's claims. The district court granted summary judgment to Aramark on all of Earle's claims without addressing Aramark's contention that it did not employ Earle. Earle now appeals the summary judgment on her discrimination, retaliation, and sexual harassment claims; the district court's failure to address Aramark's alternative argument for summary judgment; and the district court's sealing of certain documents. We affirm the district court's judgment because no genuine issue of material fact existed, the district court was not required to address Aramark's alternative theory for summary judgment when it granted summary judgment to Aramark on other grounds, and the district court's sealing of the documents was not an abuse of discretion.

I

Earle argues that the district court improperly granted summary judgment to Aramark on four of her claims: age discrimination, sex discrimination, retaliation, and sexual harassment. We review the district court's grant of summary judgment de novo.[2] Summary judgment is appropriate when the record shows "that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."[3] All evidence and reasonable inferences are viewed in the light most favorable to the non-movant.[4] Earle failed to provide direct evidence of discrimination or retaliation, so we use the familiar McDonnell Douglas Corp. v. Green[5] burden-shifting framework to analyze her claims.[6]

---

[2] Stewart v. Murphy, 174 F.3d 530, 533 (5th Cir. 1999).

[3] FED. R. CIV. P. 56(c).

[4] Stewart, 174 F.3d at 533.

[5] 411 U.S. 792 (1973).

[6] Rachid v. Jack In The Box, Inc., 376 F.3d 305, 312 (5th Cir. 2004).

To establish a prima facie case of age discrimination, Earle must show that (1) she was discharged; (2) she was qualified for the position; (3) she was within the protected class at the time of the discharge; and (4) she was either (i) replaced by someone outside the protected class, (ii) replaced by someone younger, or (iii) otherwise discharged because of her age.[7] The Age Discrimination in Employment Act extends coverage to "individuals who are at least 40 years of age."[8]

Earle was forty-four at the time of her discharge, and Earle's replacement, Tom Schula, was forty at the time he was hired. Earle was therefore a member of the protected class, but she was also replaced by someone within the class. Schula was only four years younger than Earle—an insignificant age difference that is not sufficient to support a prima facie case of age discrimination.[9] Earle alleges that Aramark failed to provide proof of Schula's age, but it was Earle's burden to show that she was replaced by someone younger or outside of the protected class.[10] Earle did not provide evidence that she was otherwise discharged because of her age. We therefore agree with the district court that Earle failed to prove a prima facie case of age discrimination.

To establish a prima facie case for sex discrimination, Earle must show that (1) she belongs to a protected class; (2) she was qualified for the position;

---

[7] Id. at 309.

[8] 29 U.S.C. § 631(a).

[9] See O'Connor v. Consol. Coin Caterers Corp., 517 U.S. 308, 313 (1996) ("In the age-discrimination context, such an inference [that an employment decision was illegitimately based on age] cannot be drawn from the replacement of one worker with another worker insignificantly younger."); Rachid, 376 F.3d at 313 (stating that an age difference of five years is a "close question"); Grosjean v. First Energy Corp., 349 F.3d 332, 338 (6th Cir. 2003) (stating that "[t]he overwhelming body of cases in most circuits has held that age differences of less than ten years are not significant enough" to establish a prima facie case for age discrimination and surveying the federal appellate courts' holdings on insignificant age differences in age discrimination cases).

[10] Rachid, 376 F.3d at 309.

(3) she suffered an adverse employment action; and (4) she was replaced by someone outside her protected class,[11] or similarly situated employees outside the protected class were treated more favorably under nearly identical circumstances.[12]

We agree with that district court that a number of the alleged harms that Earle cites are not considered adverse employment decisions for the purposes of sex discrimination—being denied administrative support, being denied access to training and leadership courses, being denied mentoring and training opportunities, being subject to the career management program for poor performance, and having employment resources withheld.[13]

Earle also claimed that she received disparate treatment based on unequal pay compared to her male counterparts. In a disparate treatment case, the plaintiff bears the burden of proving the employer's intent to discriminate.[14] On appeal, Earle's only statement with regard to proving a prima facie case for wage discrimination based on sex is that "[m]ore than sufficient evidence exists to present evidence of sex discrimination in wages as shown by Defendant's own documents." As the district court noted, Earle was paid more than one male DBD, and the second-highest paid DBD was a female. Earle failed to allege any discriminatory intent by Aramark, and the evidence failed to demonstrate any evidence of disparate treatment based on sex. Earle's reliance on the Equal Pay

---

[11] Manning v. Chevron Chem. Co., 332 F.3d 874, 881 (5th Cir. 2003).

[12] Perez v. Tex. Dep't of Criminal Justice, Institutional Div., 395 F.3d 206, 213 (5th Cir. 2004), cert. denied, 546 U.S. 976 (2005).

[13] See McCoy v. City of Shreveport, 492 F.3d 551, 559-60 (5th Cir. 2007) (holding that discrimination claims are actionable under Title VII only for "adverse employment actions" that involve "ultimate employment decisions such as hiring, granting leave, discharging, promoting, or compensating").

[14] Plemer v. Parsons-Gilbane, 713 F.2d 1127, 1135 (5th Cir. 1983).

Act is also misplaced because she sued under Title VII, which has different standards for establishing a prima facie case.

Assuming arguendo that Earle proved a prima facie case for sex discrimination based on her termination, Aramark must articulate a legitimate, non-discriminatory reason for its decision to terminate Earle. Aramark claimed that Earle was terminated for poor job performance. The burden therefore shifts back to Earle to show that Aramark's stated reason for termination was pretextual or that discrimination was a motivating factor in the termination.[15]

Earle claims that Aramark's stated reason for termination "was elusive at best" because a letter given to Earle on April 4, 2003 did not provide a basis for termination. Earle also cites Lindsey v. Prive Corp. for the notion that subjective criteria cannot be used to establish that an individual was unqualified for a position in a prima facie discrimination case.[16] Earle's reliance on Lindsey is misplaced because Aramark does not contend, as in Lindsey, that Earle was unqualified for the position—Aramark claims that Earle did not adequately perform the core aspects of her job.[17] Further, in Lindsey, the specific criteria for the job we found to be subjective was that dancers at a cabaret needed to be "'beautiful, gorgeous, and sophisticated,'"[18] whereas here, Earle was provided with a concrete list of goals and performance expectations. Earle failed to raise a genuine issue of material fact that Aramark's stated reason was pretextual or a motivating factor.

To establish a prima facie case for retaliation, Earle must show "'(1) that [she] engaged in activity protected by Title VII, (2) that an adverse employment

---

[15] See Rachid, 376 F.3d at 312.

[16] 987 F.2d 324, 327 (5th Cir. 1993).

[17] See id.

[18] Id.

action occurred, and (3) that a causal link existed between the protected activity and the adverse action.'"[19]  Earle claims that after she made harassment complaints, Aramark retaliated regarding her compensation and termination. It is undisputed that the decision-makers at Aramark had no knowledge of her complaints.  Earle does not cite any evidence in the record to show that either her compensation or termination had any causal connection to her harassment complaints.  Earle also complains that Aramark retaliated by excluding her from a training lunch, subjecting her to disciplinary write-ups, and micro-managing her performance, but these are not materially adverse employment actions.[20] Because Earle failed to demonstrate a causal link between any protected activity and adverse employment actions, she has failed to show a prima facie case for retaliation.

To establish a prima facie case for hostile work environment due to sexual harassment, Earle must show that "1) she belongs to a protected class; 2) she was subjected to unwelcome sexual harassment; 3) the harassment was based on sex; 4) the harassment affected a term, condition or privilege of employment; and 5) the employer knew or should have known of the harassment and failed to take remedial action."[21]  Earle alleges that Regional Vice President Paul Carolan sexually harassed her by:  stating that "women have more power over men than they realize"; relaying that a female client had referred to Carolan as

---

[19] Gee v. Principi, 289 F.3d 342, 345 (5th Cir. 2002) (quoting Raggs v. Miss. Power & Light Co., 278 F.3d 463, 471 (5th Cir. 2002)) (alteration in original).

[20] See Burlington N. & Santa Fe Ry. Co. v. White, 126 S. Ct. 2405, 2415 (2006) (stating that "a plaintiff must show that a reasonable employee would have found the challenged action materially adverse, which in this context means it well might have dissuaded a reasonable worker from making or supporting a charge of discrimination" (internal quotations omitted)). "An employee's decision to report discriminatory behavior cannot immunize that employee from those petty slights or minor annoyances that often take place at work and that all employees experience."  Id.

[21] Septimus v. Univ. of Houston, 399 F.3d 601, 611 (5th Cir. 2005).

"sweet meats"; asking Earle on multiple occasions whether she had found a boyfriend; having Earle retrieve t-shirts from the front of the room at a charity golf event; stating on numerous occasions that Earle looked good for a woman her age; and telling two male employees "This is how it's done" after having Earle make a last minute phone call to a colleague.

These actions did not affect "a term, condition or privilege of employment"[22] and do not constitute "conduct so egregious as to alter the conditions of employment and destroy [Earle's] equal opportunity in the workplace."[23] Earle has therefore failed to show a prima facie case for sexual harassment.

For these reasons, we affirm the district court's grant of summary judgment to Aramark on Earle's age and sex discrimination, retaliation, and sexual harassment claims.

II

Earle also claims, without citing any legal authority, that the district court erred by failing to rule on Aramark's alternative summary judgment argument that it was not Earle's employer because resolution of the argument would have created issues that Earle characterizes as impacting the entire case: that the allegedly untruthful responses regarding Aramark's employment of Earle by company executives casts doubt on all evidence provided by Aramark because the corporate culture is set by the management and dishonesty therefore pervades all facets of Aramark; that Aramark had been doing business in Texas

---

[22] Id.

[23] DeAngelis v. El Paso Mun. Police Officers Ass'n, 51 F.3d 591, 593 (5th Cir. 1995). "Any lesser standard of liability, couched in terms of conduct that sporadically wounds or offends but does not hinder a female employee's performance, would not serve the goal of equality." Id.

without authority and in violation of Texas law; and that Aramark violated federal tax law under Section 10(b) of the Securities Act of 1934.[24]

These arguments are without merit and outside the scope of Earle's appeal. Further, it is axiomatic that neither the district court nor this appellate court need address an alternative theory when the case is disposed of on other grounds.

### III

Finally, Earle asserts that the district court erred by placing documents under seal without examining them and that this action concealed fraud and tax evasion. We review the district court's decision to seal documents for abuse of discretion.[25]

The documents in question contained confidential corporate information, such as bank routing numbers and social security numbers. Other than an argument concerning the general importance of public access to court documents, Earle fails to allege any specific harm or prejudice she suffered as a result of the district court's sealing of the documents. The district court did not abuse its discretion by sealing the documents, and Earle's claims concerning fraud and tax evasion are meritless and outside the scope of this appeal.

\* \* \* \*

For these reasons, we AFFIRM the district court's judgment.

---

[24] 15 U.S.C. §§ 78a-nn.

[25] Belo Broad. Corp. v. Clark, 654 F.2d 423, 430-31 (5th Cir. 1981).