# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

No. 17-30373

United States Court of Appeals
Fifth Circuit

**FILED**

July 17, 2018

Lyle W. Cayce
Clerk

JOHN F. STROY,

> Plaintiff – Appellant,

v.

SLOAN GIBSON, Interim Secretary on behalf of Department of Veterans
Affairs,

> Defendant – Appellee.

Appeal from the United States District Court
for the Western District of Louisiana

Before ELROD, COSTA, and HO, Circuit Judges.

JENNIFER WALKER ELROD, Circuit Judge:

John Stroy filed suit against his employer, the Department of Veterans Affairs, alleging racial discrimination and retaliation under Title VII of the Civil Rights Act of 1964. The district court dismissed Stroy's retaliation claim for lack of subject matter jurisdiction and granted summary judgment in favor of the VA on Stroy's discrimination claim. For the reasons below, we AFFIRM.

## I.

John Stroy is an African-American male employed by the Department of Veterans Affairs as a primary care physician. He practices at the Lafayette Community Based Outpatient Clinic. In 2011, Stroy examined and ordered

lab tests for a patient with a history of bladder cancer, urinary tract infections, prostate cancer, and lung cancer. Two days later, a different clinic physician saw the same patient, and then six days after that, another clinic physician saw the patient. About two weeks later, Stroy saw the patient again, ordered lab tests, and adjusted the patient's medications. Stroy was on leave when the results from the lab tests were ready, and he did not review the results. Two days after Stroy saw the patient the second time, a clinic psychiatrist saw the patient, and, that same day, the patient was admitted with acute renal failure to the Alexandria Veterans Affairs Medical Center.

Under the VA's policies, there are specific events that may trigger peer review of a doctor's patient care. Relevant here, the VA may conduct a peer review: (1) after abnormal lab results are not reviewed by a physician; or (2) after a patient is admitted to the hospital within three days of an ambulatory care visit. The peer review process is meant to improve patient care, and the information gathered during the process "may not be used for personnel actions, disciplinary action, to affect privileges, or to affect employment."

A peer review committee looked into Stroy's medical care of the patient who suffered acute renal failure and determined that "[m]ost experienced competent practitioners would have managed the case differently." When Stroy learned about the peer review committee and its determination, he requested both an opportunity to respond and an explanation for "inconsistencies" in the peer review procedure. A second peer review committee meeting was scheduled, cancelled, and rescheduled. After the second meeting was rescheduled but before it was held, Stroy contacted an EEO counselor, claiming racial discrimination based on this allegedly improper peer review.

No. 17-30373

When the second peer review committee met, Stroy participated via video teleconference. The committee revised its finding and determined that "most experienced competent practitioners would have managed the case in a similar manner." Despite the committee's revised finding, Stroy subsequently filed an official EEO complaint of discrimination in December 2011.

About nine months after Stroy filed his discrimination claim, Stroy allegedly left a patient unattended in an examination room. This incident was reported to Dr. Suzanne Taylor, the Acting Chief of Staff for the Alexandria Veterans Medical Center. Stroy insists that the patient was waiting for further counseling from either a nurse or social worker, so Stroy took his normal lunch break because everyone was busy. Taylor investigated the incident, and Stroy was required to travel to Alexandria for a fact-finding meeting. Eventually, a memorandum was issued, detailing the incident and concluding that "Stroy left a Veteran in a room for a period of time without addressing his needs for medications." Taylor also sent Stroy a memorandum, addressing this incident and outlining expectations for his behavior in the future.

Based on these incidents, Stroy sought to amend his administrative complaint to include a claim of retaliation. The EEO administrative judge denied his motion to amend his original EEO complaint of discrimination to add this retaliation claim. On February 5, 2013, Stroy submitted a separate EEO complaint alleging retaliation. The Office of Resolution Management accepted the complaint on March 4, 2013.[1] On August 2, 2013, crucially fewer than 180 days from when Stroy filed his EEO complaint, Stroy filed—in federal court—a *pro se* complaint, alleging race discrimination and retaliation.

---

[1] Stroy's administrative case was eventually dismissed because of the pending action in federal court.

No. 17-30373

The district court dismissed Stroy's retaliation claim for lack of subject matter jurisdiction.  It determined that Stroy filed his claim in federal court prematurely and thus failed to exhaust his administrative remedies.  As a result, the district court reasoned, it did not have subject matter jurisdiction over Stroy's retaliation claim.  The district court also granted summary judgment in favor of the VA on Stroy's discrimination claim because it determined that he had not established a prima facie case of racial discrimination.  Stroy filed a motion to amend the judgment arguing that the district court should have remanded the retaliation claim to the agency rather than dismissed it with prejudice, but the district court denied this motion.

On appeal, Stroy argues that the district court should not have dismissed his retaliation claim for a lack of subject matter jurisdiction.  According to Stroy, Title VII's administrative exhaustion requirement is not a jurisdictional requirement.  He also insists that he did establish a prima facie case of racial discrimination.  Specifically, he asserts that the VA discriminated against him when his patient care was subjected to peer review while the care provided by white physicians, who also provided medical care to that same patient, was not reviewed.

## II.

We review the question of subject matter jurisdiction *de novo*.  *See Nat'l Football League Players Ass'n v. Nat'l Football League*, 874 F.3d 222, 225 (5th Cir. 2017).  We also review *de novo* a grant of summary judgment.  *Banks v. E. Baton Rouge Par. Sch. Bd.*, 320 F.3d 570, 575 (5th Cir. 2003).  Summary judgment is appropriate only if "the movant shows that there is no genuine

No. 17-30373

dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).

### III.

### A.

Before seeking relief in federal court, Title VII plaintiffs must exhaust their administrative remedies. *Davis v. Fort Bend Cty.*, 893 F.3d 300, 303 (5th Cir. 2018). Administrative exhaustion has not been satisfied until either: "(1) the employee receives notice of final agency action or by the EEOC upon appeal from an agency decision, or (2) 180 days have passed from the filing of the administrative complaint or appeal thereof without final agency action." *Ruiz v. Brennan*, 851 F.3d 464, 468 (5th Cir. 2017) (citing 42 U.S.C. § 2000e-16(c)).

As Stroy admits, he failed to exhaust his administrative remedies because he filed in federal court prematurely, two days shy of the statutorily-mandated 180 days. *See* 42 U.S.C. § 2000e-16(c). Based on Stroy's premature filing, the district court dismissed his action for lack of subject matter jurisdiction. As we have held, however, Title VII's administrative exhaustion requirement is not a jurisdictional requirement. *Davis*, 893 F.3d at 306; *Davenport v. Edward D. Jones & Co., L.P.*, 891 F.3d 162, 169 (5th Cir. 2018); *see also Womble v. Bhangu*, 864 F.2d 1212, 1213 (5th Cir. 1989). Rather, it is only a precondition to filing suit, subject to waiver or estoppel defenses. *Davis*, 893 F.3d at 306.

Nevertheless, the district court's error makes no difference in this case. Stroy does not offer a waiver or estoppel argument to excuse his failure to exhaust, and he only insists that his "good faith effort" to comply with the regulations is enough to save his claim. Even though Stroy insists that a court can exercise its equitable powers to excuse his premature filing, he fails to articulate a reason why we should do so in this particular case. Indeed, in the

district court, he gave no justification for his failure to abide by the filing rules. "Administrative exhaustion is important because it provides an opportunity for voluntary compliance before a civil action is instituted." *Id.* at 307. Even though administrative exhaustion is not a *jurisdictional* requirement, it is still a requirement. Given that Stroy offers no justification for his failure to exhaust, we affirm the district court's dismissal of Stroy's retaliation claim.[2]

### B.

Stroy also argues that the district court erred when it granted summary judgment in favor of the VA on his racial discrimination claim. Title VII plaintiffs may prove a racial discrimination claim either by direct or circumstantial evidence. *McCoy v. City of Shreveport*, 492 F.3d 551, 556 (5th Cir. 2007). We use the well-known burden-shifting analysis set forth in *McDonnell Douglas* for cases, such as this one, with only circumstantial evidence of discrimination. *Id.* Under the *McDonnell Douglas* framework, the plaintiff must first make out a prima facie case for race discrimination, by showing that he "(1) is a member of a protected group; (2) was qualified for the position at issue; (3) was discharged or suffered some adverse employment action by the employer; and (4) was replaced by someone outside his protected group or was treated less favorably than other similarly situated employees outside the protected group." *Id.* If the plaintiff makes this showing, the

---

[2] When a district court dismisses a claim for failure to exhaust under Federal Rule of Civil Procedure 12(b)(6), the dismissal is without prejudice so that a plaintiff may return to court after he has exhausted his administrative remedies. *Martin K. Eby Constr. Co. v. Dall. Area Rapid Transit*, 369 F.3d 464, 467 n.5 (5th Cir. 2004). Even though the district court here dismissed Stroy's claim under Rule 12(b)(1), not Rule 12(b)(6), the result is the same: dismissal without prejudice.

No. 17-30373

burden then shifts to the employer to set forth some legitimate, non-discriminatory reason for its decision. *Id.* at 557.

As the district court held, Stroy failed to raise a genuine issue of material fact as to the third element of the prima facie case of racial discrimination.[3] The VA's peer review process is not an "adverse employment action" under Title VII. Adverse employment actions are "'ultimate employment decisions' such as hiring, firing, demoting, promoting, granting leave, and compensating." *Thompson v. City of Waco*, 764 F.3d 500, 503 (5th Cir. 2014). As we have explained, "[a]n employment action that does not affect job duties, compensation, or benefits is not an adverse employment action." *Id.* (quoting *Pegram v. Honeywell, Inc.*, 361 F.3d 272, 282 (5th Cir. 2004)). The VA's policy is clear: the information gathered through the peer review process "may not be used for personnel actions, disciplinary action, to affect privileges, or to affect employment." We have a "stringent" standard for showing an adverse employment action. *Pegram*, 361 F.3d at 282–83. Stroy offered no evidence that he suffered a reduction in privileges, job responsibilities, or pay as a result of the peer review process. In fact, the peer review committee eventually revised its determination as to Stroy's patient care, finding that "[m]ost experienced competent practitioners would have managed the case in a similar manner." Based on Stroy's failure to show an adverse employment action, the

---

[3] The parties do not dispute that Stroy was a member of a protected class and qualified for his position, satisfying both the first and second elements.

district court did not err in granting the VA's motion for summary judgment on Stroy's racial discrimination claim.[4]

AFFIRMED.[5]

---

[4] In any event, Stroy failed to establish the fourth element of his prima facie case of racial discrimination. As the district court correctly determined, Stroy did not raise a genuine issue of material fact with respect to his allegation that other similarly situated persons, i.e., other physicians, were treated more favorably. The physicians that Stroy employed as comparators were not similarly situated because either: (1) the type or (2) the timing of their medical care did not meet the criteria for peer review under the VA's policy.

[5] The district court also denied Stroy's motion to alter or amend the judgment. Because Stroy did not brief this issue, his challenge to that ruling is forfeited. *United States v. Scroggins*, 599 F.3d 433, 447 (5th Cir. 2010) (holding that an issue was "not adequately presented" when the brief did "not discuss it in any depth").