# United States Court of Appeals
## for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**
March 11, 2021

Lyle W. Cayce
Clerk

No. 20-30340

Derrick J. Green,

*Plaintiff—Appellant*,

*versus*

United Parcel Service, Incorporated (UPS),

*Defendant—Appellee*.

Appeal from the United States District Court
for the Eastern District of Louisiana
USDC No. 2:18-CV-8744

Before King, Elrod, and Willett, *Circuit Judges*.
Per Curiam:*

Plaintiff-appellant Derrick J. Green alleges violations of the Americans with Disabilities Act, 42 U.S.C. § 12101 *et seq.* and Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.* by defendant-appellee United Parcel Service. The district court granted summary judgment in favor of United Parcel Service and Green now appeals. We AFFIRM.

---

* Pursuant to 5th Circuit Rule 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5th Circuit Rule 47.5.4.

**I.**

Plaintiff-appellant Derrick J. Green was hired by United Parcel Service ("UPS") in October 2005. He began working as an automotive mechanic in 2006 and continued in that role until 2013. The majority of Green's work was performed on "package cars"[1] and included Preventative Maintenance Inspections ("PMIs"). A portion of the PMI is conducted inside the facility, while another portion is performed outside in the form of a test drive conducted by the mechanic. The test drive must be performed on public roads in order to bring the car to fifth gear.

Green is a member of the Teamsters Local 270 Union, and as such, Green was bound by a collective bargaining agreement ("CBA"). Pursuant to the CBA, mechanics select shifts based on seniority. According to Green, he was at the "low end" of seniority as of 2013.

Shifts at UPS facilities are staggered so that a mechanic is present 24 hours a day. UPS employs more mechanics during night shifts because there is an increased need for maintenance and repair work during those hours. In particular, most of the PMI work must be performed at night because the package cars are out delivering packages during the day. For the entire duration of his tenure as a mechanic with UPS, Green worked a shift from 4:00 p.m. to 1:00 a.m.

On June 26, 2013, Green injured his right eye while working on a package car. Specifically, a fan blew debris into his eye, causing serious irritation. While Green recovered from this injury, Green and UPS entered into a temporary alternative work agreement. Under the agreement, Green performed his typical duties but did not drive a commercial vehicle. The

---

[1] "Package cars" are UPS vehicles that deliver packages.

No. 20-30340

agreement was limited to 29 days pursuant to UPS policy, and, after it was exhausted, Green took a medical leave of absence and was placed on workers' compensation. According to Green, he was told by his supervisor that he "couldn't come back until [he] was 100 percent released." Green continued to see doctors during this period to get his eye assessed.

Green stated that he has no issues with his vision during the day. Rather, he has a particular problem that arises only at night and only when a light shines directly into his right eye. Specifically, Green described seeing a "halo" in his right eye when light hits it directly. He experiences no pain and his vision restores itself instantly after the light source is gone. Green explained that, once his vision is restored, the vision in his right eye is equivalent to that in his left eye. Indeed, normally, Green has 20/20 corrected vision in both eyes.[2]

Green testified that, while he does not drive at night if he does not have to, he has "somewhat got used [to] it." In fact, he stated that he has driven his personal vehicle in the dark. He stated he is "nervous" while driving in the dark but declined to say he "felt unsafe." Green's treating physician, Dr. Satya Reddy, diagnosed him as having a corneal scar in the anterior stroma. This condition would cause the "starburst" imagery that Green described. Dr. Reddy testified that depth perception would be diminished during such a "starburst event." Testing performed by Dr. Reddy showed that Green's visual acuity in his right eye drops to 20/100 when such conditions are recreated. Dr. Reddy determined in 2013 that Green was unable to work at night or in poorly lit areas.

---

[2] Green took a Department of Transportation ("DOT") exam on December 5, 2013. The exam reported that Green has 20/20 vision in both eyes with corrective lenses. Another DOT exam in April of 2014 confirmed the same.

No. 20-30340

On November 25, 2013, Green applied for an Americans with Disabilities Act ("ADA") accommodation with UPS. Green identified his medical condition as "corn[e]al scar[r]ing with blurred vision." In response to a form question regarding how the medical condition affected his ability to perform the essential functions of his job, Green answered "no night time driving." With regard to requested accommodations, Green stated "change hours, [h]ave coworkers move[] trucks in and out of shop." He further stated that he could perform "any other jobs in [the facility]," including "[d]ay time mechanic, porter, [d]aytime shifter, [d]aytime fuel and carwash," and was willing to commute for any reassignment within 20 miles of the New Orleans facility. Green explained that there were "no limitations to the shift," but he could not "drive at night time and [had] to work in a well [lit] area." Green also expressed that he was not willing to consider a part-time position.

After Green submitted his application for accommodation, UPS engaged in a six-month search for positions that met his requests. UPS determined that there were no daytime mechanic positions available in the 20-mile radius that Green requested. It further contended that moving Green to a daytime position would violate the CBA's requirement that shifts be bid for based on seniority. Moreover, according to UPS, facilitating Green's alternate request to have a coworker move vehicles for him would be inefficient and require having another mechanic work Green's exact shift.

In the course of its search, UPS twice offered Green a part-time loader position, which Green rejected. Green was also offered a plant engineering job which required a test to qualify. Green did not pass the test but later stated he would have taken the job if he had. According to UPS, it offered a full-time mechanic position to Green in February 2020, which he has not accepted. Green remains on a medical leave of absence.

On January 29, 2014, Green filed a charge of discrimination with the

No. 20-30340

EEOC. Green compared his experience to that of a white mechanic, Kerry Guidroz, who was given accommodations in his full-time position after becoming legally blind in his right eye. In May 2018, the EEOC found reasonable cause to believe UPS had failed to provide accommodations to Green comparable to those provided to Guidroz.

On September 19, 2018, Green brought suit against UPS alleging discrimination based on race and disability in violation of the ADA and Title VII. Following the resolution of two successive motions to dismiss, Green proceeded with a failure to accommodate claim under the ADA and a claim of race discrimination under Title VII. On May 27, 2020, the district court granted summary judgment in favor of UPS on both claims. Green now appeals that decision.[3]

## II.

"We review a district court's summary judgment *de novo*, applying the same standard as the district court." *Tagore v. United States*, 735 F.3d 324, 327 (5th Cir. 2013). Moreover, "[w]e may affirm summary judgment on any basis raised below and supported by the record." *E.E.O.C. v. Simbaki, Ltd.*, 767 F.3d 475, 481 (5th Cir. 2014). Even under our de novo standard of review, we "still app[ly] the manifest-error standard of review to the district court's evidentiary rulings." *Lyles v. Medtronic Sofamor Danek, USA, Inc.*, 871 F.3d

---

[3] Green also renews arguments set forth in motions to strike filed below in response to UPS's motion for summary judgment. Green did not, however, designate the orders denying those motions as issues in his notice of appeal. Nevertheless, amendments to the Federal Rules of Civil Procedure have made it unnecessary for parties to attack summary judgment evidence by filing separate motions to strike. *Cutting Underwater Techs. USA, Inc. v. Eni U.S. Operating Co.*, 671 F.3d 512, 515 (5th Cir. 2012). On appeal, we have treated separately filed motions to strike as mere objections to summary judgment evidence. *See id.* Accordingly, we may consider Green's renewed arguments on appeal about the propriety of such evidence.

No. 20-30340

305, 311 (5th Cir. 2017) (quoting *Love v. Nat'l Med. Enters.*, 230 F.3d 765, 775 (5th Cir. 2000)). "'[M]anifest error' is an error 'that is plain and indisputable, and that amounts to a complete disregard of the controlling law.'" *Id.* (quoting *Guy v. Crown Equip. Corp.*, 394 F.3d 320, 325 (5th Cir. 2004)).

## III.

### A. Evidentiary Challenges

Green reiterates objections to the consideration of two pieces of evidence—his own deposition and the declaration of UPS HR manager Wilfred Edwards. With regard to his own deposition, he contends that he was not able to review the transcript and make any required changes. With regard to Edwards's declaration, Green renews a vague contention that it contains unsupported hearsay but cites no specific examples in the record. The district court considered both arguments and denied Green's relevant motions. Green shows no error in either decision that is "plain and indisputable, and that amounts to a complete disregard of the controlling law." *Lyles*, 871 F.3d at 311 (quoting *Guy*, 394 F.3d at 325).

### B. Green's ADA Claim

Green argues that the district court erred in finding that he was not disabled under the ADA. He contends that his condition has substantially limited his sight and ability to work such that he is disabled under the ADA.[4]

The ADA prohibits covered employers from "discriminat[ing] against a qualified individual on the basis of disability." 42 U.S.C. § 12112(a).

---

[4] Green also argues for the first time on appeal that UPS regarded him as having an impairment. However, as this argument was not raised before the district court, it is waived. *See LeMaire v. La. Dep't of Transp. & Dev.*, 480 F.3d 383, 387 (5th Cir. 2007).

Such discrimination includes the failure to make "reasonable accommodations to the known physical . . . limitations of an otherwise qualified individual with a disability . . . unless such covered [employer] can demonstrate that the accommodation would impose an undue hardship." *Id.* § 12112(b)(5)(A). Accordingly, to establish a failure-to-accommodate claim under the ADA, the plaintiff must show: (1) that he is a "qualified individual with a disability;" (2) "the disability and its consequential limitations were 'known' by the covered employer;" and (3) "the employer failed to make 'reasonable accommodations' for such known limitations." *Feist v. La., Dep't of Justice, Off. of the Att'y Gen.*, 730 F.3d 450, 452 (5th Cir. 2013) (citations omitted).

The ADA defines a "disability" as "(A) a physical or mental impairment that substantially limits one or more major life activities of such individual; (B) a record of such an impairment; or (C) being regarded as having such an impairment . . . ." 42 U.S.C. § 12102(1). In order to qualify under subsection (A), it is not enough merely to have an impairment. *See E.E.O.C. v. Chevron Phillips Chem. Co., LP*, 570 F.3d 606, 614 (5th Cir. 2009). Rather, a plaintiff must "demonstrate that the impairment substantially limits a major life activity"—including seeing or working. *Id.* "[T]o be substantially limited means to be unable to perform a major life activity that the average person in the general population can perform, or to be significantly restricted in the ability to perform it." *Id.* (citation omitted). In particular, "[w]hen the major life activity under consideration is that of working, the statutory phrase 'substantially limits' requires, at a minimum, that [the plaintiff] allege [he is] unable to work in a broad class of jobs." *Kemp v. Holder*, 610 F.3d 231, 238 (5th Cir. 2010) (quoting *Sutton v. United Air Lines, Inc.*, 527 U.S. 471, 491 (1999)); *see also* 29 C.F.R. pt. 1630, app. (Substantially Limited in Working) ("Demonstrating a substantial limitation in performing the unique aspects of a single specific job is not sufficient to

establish that a person is substantially limited in the major life activity of working.").

Green has not shown that he is disabled under the ADA because the evidence does not support that he is substantially limited in the major life activities of seeing or working. With regard to the first such major life activity, we have previously held that a plaintiff's partial blindness did not qualify as a disability because he was still able to "perform normal daily activities," including driving cars. *Still v. Freeport-McMoran, Inc.*, 120 F.3d 50, 52 (5th Cir. 1997). We found "no evidence that [the plaintiff was] unable to engage in any usual activity because of his partial blindness" and thus concluded that he was not substantially limited in the major life activity of seeing. *Id.*; *see also Watson v. Tex. Youth Comm'n*, 269 F. App'x 498, 501 (5th Cir. 2008) (applying *Still* in the comparable context of the Rehabilitation Act where plaintiff continued to drive and passed a license vision test). Similarly, in this case, despite his vision impairment, Green continues to drive his personal vehicle at night. Moreover, by Green's own admission, he was certified under DOT regulations despite an acknowledgement of his impairment. Based on the foregoing, Green has not adduced sufficient evidence that, compared to most people in the general population, he is substantially limited in the major life activity of seeing. *See* 29 C.F.R. § 1630.2(j)(1)(ii).

Moreover, Green has failed to show a substantial limitation in the major life activity of working beyond his inability to perform "the unique aspects of a single specific job." 29 C.F.R. pt. 1630, app. (Substantially Limited in Working). Indeed, Green does not even attempt to show that he is "unable to work in a broad class of jobs." *Kemp*, 610 F.3d at 238. Accordingly, Green has not adduced sufficient evidence that he is substantially limited in the major life activity of working.

Based on the foregoing, we affirm the district court's grant of

summary judgment on Green's ADA claim.

**C. Green's Title VII Claim**

Green argues that he established a *prima facie* case of discrimination "by showing that he . . . was not given a day shift" even though Kerry Guidroz—a white mechanic who also suffered from vision impairment— "was given a day shift." Accordingly, Green contends that, as a black man, he "was treated more [severely] than a similarly situated white employee, under nearly identical circumstances."

Green does not argue that there was direct evidence of race discrimination and thus attempts to establish a *prima facie* case of race discrimination under Title VII via circumstantial evidence. *See Turner v. Baylor Richardson Med. Ctr.*, 476 F.3d 337, 345 (5th Cir. 2007). To establish a *prima facie* case of race discrimination, a plaintiff must show he:

> (1) is a member of a protected group; (2) was qualified for the position at issue; (3) was discharged or suffered some adverse employment action by the employer; and (4) was replaced by someone outside his protected group or was treated less favorably than other similarly situated employees outside the protected group.

*Stroy v. Gibson*, 896 F.3d 693, 698 (5th Cir. 2018). "If the plaintiff makes this showing, the burden then shifts to the employer to set forth some legitimate, non-discriminatory reason for its decision." *Id.* at 698–99.

With regard to the fourth element, we require that "an employee who proffers a fellow employee as a comparator demonstrate that the employment actions at issue were taken 'under nearly identical circumstances.'" *Lee v. Kan. City S. Ry. Co.*, 574 F.3d 253, 260 (5th Cir. 2009) (quoting *Little v. Republic Refin. Co., Ltd.*, 924 F.2d 93, 97 (5th Cir. 1991)). Though we do not "interpret 'nearly identical' as synonymous with 'identical,'" we have

nonetheless held that "the plaintiff's conduct that drew the adverse employment decision must have been 'nearly identical' to that of the proffered comparator who allegedly drew dissimilar employment decisions." *Id.* at 260 (quoting *Perez v. Tex. Dep't of Crim. Just.*, 395 F.3d 206, 213 (5th Cir. 2004)). This is not that case. Indeed, it cannot be said that Green's impairment is sufficiently similar to Guidroz's such that their "circumstances" can be deemed "nearly identical." *Id.* Though both suffered an impairment to their right eye, Guidroz's impairment rendered him legally blind in that eye and left him with blurry vision regardless of the time of day. Indeed, Green's vision is completely normal absent very particular conditions. Moreover, while Guidroz testified that he was unable to pass the DOT certification exam, Green was able to pass the exam.[5]

Consequently, unable to show that his comparator's impairment was similar in severity to his own, Green fails to establish that the relevant employment actions were taken under nearly identical circumstance and thus does not show that he was "treated less favorably than other similarly situated employees outside [his] protected group." *Stroy*, 896 F.3d at 698; *see, e.g.*, *Stanback v. Best Diversified Prods., Inc.*, 180 F.3d 903, 910 (8th Cir. 1999) (rejecting Title VII claim based on failure to offer accommodations in part because plaintiff could not show that the injuries suffered by comparators were comparable in "severity"). Based on the foregoing, we affirm the district court's grant of summary judgment on Green's Title VII claim.

---

[5] Green argues that he and Guidroz are similarly situated because both had a visual acuity of 20/100. However, Green's vision only drops to 20/100 under low light conditions when lights are directed at his eyes, and Guidroz testified that he had not been given a precise set of numbers for his visual acuity in that eye.

## IV.

For the foregoing reasons, we AFFIRM the district court's grant of summary judgment in favor of UPS.