# United States Court of Appeals
# for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**

May 22, 2026

Lyle W. Cayce
Clerk

———————————

No. 25-60278

———————————

Barbie Bassett,

*Plaintiff—Appellant*,

*versus*

Gray Media Group, Incorporated, *doing business as* WLBT-TV,

*Defendant—Appellee*.

———————————————————————

Appeal from the United States District Court
for the Southern District of Mississippi
USDC No. 3:23-CV-3154

———————————————————————

Before Clement, Douglas, and Ramirez, *Circuit Judges*.

Per Curiam:[*]

Barbie Bassett appeals a summary judgment in favor of Gray Media Group, Inc. d/b/a WLBT-TV (WLBT), on her claim that it discriminated against her based on race by terminating her employment as a news anchor for twice using language on air that it deemed racially offensive and about which viewers and co-workers complained. We AFFIRM.

———————————

[*] This opinion is not designated for publication. *See* 5th Cir. R. 47.5.

I

A

In 1999, Bassett started working at a television news station in Jackson, Mississippi—WLBT. From October 2021 until her termination in 2023, she was a morning news anchor and co-host for WLBT's "Today at 11" show. The position required her to "not engage in any conduct that could reflect negatively on [WLBT] or its reputation in the community." Bassett also agreed not to "commit any act or become involved in any situation or occurrence tending to degrade [her] in the mind of the public or which may bring [Bassett] into public disrepute, contempt, scandal or ridicule, or tend to shock, insult or offend the community or which may reflect unfavorably on" her or WLBT.

While engaging in live, on-air dialogue on October 28, 2022, Bassett, who is White, referred to a Black reporter's grandmother as "grand m*mmy." WLBT received numerous viewer complaints regarding Bassett's use of the term. Several WLBT employees also expressed offense. On November 10, 2022, WLBT's news director, Charles Jones, issued Bassett a written warning stating that Bassett's comment violated WLBT's "unlawful harassment – hostile work environment" policy because "[t]he term . . . is a negative depiction used during slavery to refer to an African American Grandmother," and "[t]he Comment was insensitive and inappropriate during the newscast." The warning also stated that further violations could lead to additional disciplinary action, including termination.

Less than six months later, while again engaging in on-air dialogue with co-anchors following a report about rap artist Snoop Dogg on March 8, 2023, Bassett used a phrase attributed to him—"fo shizzle, my n**zle" (the "Phrase"). When the show went to commercial break, a Black co-anchor said to Bassett: "I can't believe you just said the N word on live TV." Bassett

responded that the Phrase meant "for real, my friend" or "for real, my brother."

Following the broadcast, other Black employees told Jones and his supervisor, general manager Ted Fortenberry, that the Phrase referenced a racial slur. Bassett's comment also drew online criticism, numerous viewer and employee complaints, and national media attention.

Although Jones and Fortenberry did not know what the Phrase meant or whether it referred to a racial slur, they conferred with a human resources representative and in-house counsel and concluded that the Phrase was derogatory. On March 14, 2023, WLBT terminated Bassett's employment.

B

Bassett filed a charge of discrimination with the Equal Employment Opportunity Commission. After she received a right-to-sue letter, she sued WLBT under Title VII of the Civil Rights Act of 1964 for alleged racial discrimination.[1]

WLBT moved for summary judgment. In response, Bassett argued there were genuine issues of material fact regarding whether her race was a motivating factor in the decision to terminate her. She principally relied on deposition testimony by Fortenberry in his capacity as corporate designee that there are "some things that [B]lack people can say that [W]hite people can't say." During his deposition, Fortenberry was asked whether it is "racist" for Snoop Dogg, who is Black, to use the Phrase. Fortenberry responded that he believed in "today's world," "there are things that some

---

[1] Bassett also sued for age discrimination and sought a declaratory judgment that her noncompete agreement with WLBT was void. She has since voluntarily conceded the age discrimination claim, and she did not appeal the district court's dismissal of her declaratory judgment claim.

people can say that are not considered to be inappropriate based on who they are and their background compared to other people." More "specific[ally,]" "there's some things that [B]lack people can say that [W]hite people can't say." But the Phrase, Fortenberry concluded, is "certainly not something you want to say on the air whether you're [B]lack or [W]hite, on [WLBT] for sure."

The district court granted WLBT's motion for summary judgment, applying a "modified" version of the burden-shifting framework established in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). Bassett timely appealed.

## II

This court "review[s] a district court's ruling on a motion for summary judgment *de novo* and appl[ies] the same legal standards as the district court." *Bellard v. Gautreaux*, 675 F.3d 454, 460 (5th Cir. 2012). Summary judgment is proper where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). The evidence is viewed "in the light most favorable to the nonmoving party." *In re Intelogic Trace, Inc.*, 200 F.3d 382, 386 (5th Cir. 2000).

## III

Bassett argues that the district court erred in applying the *McDonnell Douglas* framework. But even if the framework applies, she contends, it erred by finding that she did not satisfy her summary-judgment burden.

Under Title VII, it is unlawful for an employer to "discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1). "Title VII

plaintiffs may prove a racial discrimination claim either by direct or circumstantial evidence." *Stroy v. Gibson ex rel. Dep't of Veterans Affs.*, 896 F.3d 693, 698 (5th Cir. 2018). For cases involving "only circumstantial evidence of discrimination," this court "use[s] the well-known burden-shifting analysis set forth in *McDonnell Douglas*." *Id.*

Under the *McDonnell Douglas* framework, "the plaintiff must first establish a prima facie case of discrimination." *McCoy v. City of Shreveport*, 492 F.3d 551, 556 (5th Cir. 2007), *abrogated on other grounds by Hamilton v. Dallas Cnty.*, 79 F.4th 494 (5th Cir. 2023). "If the plaintiff makes a prima facie showing, the burden then shifts to the employer to articulate a legitimate, non[-]discriminatory or non[-]retaliatory reason for its employment action." *Id.* at 557. Should the employer meet its burden, "the plaintiff then bears the ultimate burden of proving that the employer's proffered reason is not true but instead is a pretext for the real discriminatory or retaliatory purpose." *Id.*

If, however, a plaintiff relies on a "mixed-motive" theory—i.e., alleges that even if the employer's "proffered reasons are not pretextual, racial animus was also a *motivating factor* for her firing"—this court applies a "modified" *McDonnell Douglas* test. *Turner v. Baylor Richardson Med. Ctr.*, 476 F.3d 337, 347 (5th Cir. 2007) (emphasis added). The first two inquiries under the modified framework are the same as the traditional framework. *Rachid v. Jack In The Box, Inc.*, 376 F.3d 305, 312 (5th Cir. 2004). But as an alternative to showing pretext, "a plaintiff must offer sufficient evidence to create a genuine issue of material fact that the defendant's reason, while true, is only one of the reasons for its conduct and that another motivating factor was the plaintiff's protected characteristic." *Turner*, 476 F.3d at 347. "[I]f the plaintiff shows that [her] protected characteristic was a motivating factor, then the burden shifts to the employer to show that the adverse employment

No. 25-60278

decision would have been made regardless of the characteristic." *Black v. Pan Am. Lab'ys, L.L.C.*, 646 F.3d 254, 259 (5th Cir. 2011).

A

Bassett argues that the district court erred in applying the *McDonnell Douglas* burden-shifting framework to evaluate her Title VII claims "simply because [it] found the case presented only circumstantial and not direct evidence."[2] She asserts that, under *Brady v. Office of Sergeant at Arms*, 520 F.3d 490 (D.C. Cir. 2008), and *Bostock v. Clayton County*, 590 U.S. 644 (2020), the district court should have instead evaluated "only whether there was sufficient evidence to demonstrate that race was a motivating factor in Bassett's termination." We disagree.[3]

---

[2] Bassett also suggests that the district court erred in applying *McDonnell Douglas* because Fortenberry's deposition testimony that that there are "some things that [B]lack people can say that [W]hite people can't say" qualifies as *direct* evidence of discrimination. *See Trans World Airlines, Inc. v. Thurston*, 469 U.S. 111, 121 (1985) ("[T]he *McDonnell Douglas* test is inapplicable where the plaintiff presents direct evidence of discrimination."). She has "waived this issue by inadequately briefing it and relegating it to a footnote," however. *See Holden v. U.S. United Ocean Servs., L.L.C.*, 582 F. App'x 271, 274 n.2 (5th Cir. 2014) (unpublished); *see also Bridas S.A.P.I.C. v. Gov't of Turkmenistan*, 345 F.3d 347, 356 n.7 (5th Cir. 2003) (holding that an issue the plaintiff "attempted to appeal[] in a footnote" was waived because "[a]rguments that are insufficiently addressed in the body of the brief . . . are waived"). Moreover, Bassett has also failed to show that this is the "rare" direct evidence case, *see Portis v. First Nat. Bank of New Albany*, 34 F.3d 325, 328 (5th Cir. 1994), because nothing in the record suggests that Fortenberry's personal belief that there are "some things that [B]lack people can say that [W]hite people can't say" was related to or "served as a basis" for her termination. *See Herster v. Bd. of Supervisors of La. State Univ.*, 887 F.3d 177, 185 (5th Cir. 2018) (citation modified); *see also Etienne v. Spanish Lake Truck & Casino Plaza, L.L.C.*, 778 F.3d 473, 476 (5th Cir. 2015) (noting that direct evidence is that which is "related to the challenged employment decision"). Fortenberry stated that the Phrase should not be said "on the air" by anyone, regardless of race.

[3] It is unclear how the district court's application of *McDonnell Douglas* is meaningfully different from the standard that Bassett argues should have been applied. She asserts that the district court should have simply evaluated whether race was a motivating

No. 25-60278

This court has made clear that *McDonnell Douglas* applies in Title VII discrimination cases relying on circumstantial evidence, even at the summary-judgment stage. *See, e.g.*, *Stroy*, 896 F.3d at 698; *Turner*, 476 F.3d at 345–49; *McCoy*, 492 F.3d at 556–62; *Awe v. Harris Health Sys.*, 163 F.4th 969, 972 (5th Cir. 2026) (per curiam). We have consistently declined to follow *Brady*, which held that courts should not "decide whether the plaintiff actually made out a prima facie case under *McDonnell Douglas*" at the summary-judgment stage if "an employer has asserted a legitimate, non-discriminatory reason" for its adverse decision. *Compare Brady*, 520 F.3d at 494, *with Hague v. Univ. of Tex. Health Sci. Ctr. at San Antonio*, 560 F. App'x 328, 335 & n.8 (5th Cir. 2014) (unpublished) (concluding that, notwithstanding *Brady*, "the district court must address whether [the plaintiff] established a prima facie case").[4] This court has also held that *Bostock*, which did not cite or discuss *McDonnell Douglas*, did not "alter" the

---

factor in WLBT's decision to terminate her, but it addressed that precise issue as *part of* the modified *McDonnell Douglas* test that it applied. *See Rachid*, 376 F.3d at 312. It assumed that Bassett had satisfied *McDonnell Douglas*'s prima-facie case requirement and held that WLBT articulated a legitimate reason for her termination. As a result, the district court evaluated exactly what Bassett propounds here—whether race was a motivating factor in her termination.

[4] *See also Stallworth v. Singing River Health Sys.*, 469 F. App'x 369, 372 (5th Cir. 2012) (unpublished) ("Stallworth urges us to follow [*Brady*] and pretermit the issue whether she has made the requisite prima facie showing given that Singing River has offered legitimate, non[-]discriminatory reasons for the challenged employment actions. She cites no precedent in this circuit for following *Brady*, and we decline to do so."); *Abajian-Salon v. City of San Antonio*, No. 25-50010, 2026 WL 311957, at *3 n.3 (5th Cir. Feb. 5, 2026) (unpublished) ("[W]e have explicitly rejected the *Brady* approach. . . . Therefore, we apply the *McDonnell Douglas* test here."); *Atterberry v. City of Laurel*, 401 F. App'x 869, 871 n.1 (5th Cir. 2010) (unpublished) ("Whatever the merits of *Brady* may be, our rule of orderliness requires that we follow our own precedent."); *Long v. City of Llano*, No. 24-50663, 2025 WL 655800, at *2 n.1 (5th Cir. Feb. 28, 2025) (unpublished) (holding that the plaintiff's argument that this court "should skip the prima facie analysis altogether . . . is foreclosed by our precedent").

"standard[]" in Title VII cases "[a]t the summary judgment stage, when the claim relies on circumstantial evidence." *See Olivarez v. T-mobile USA, Inc.*, 997 F.3d 595, 601 (5th Cir. 2021) (noting that *Bostock* simply "defined sex discrimination to encompass sexual orientation and gender identity discrimination").[5]

Because this is a circumstantial evidence case, and this court has consistently rejected Bassett's arguments to set aside *McDonnell Douglas*, the district court did not err in applying that framework here.

B

Bassett next argues that the district court erred in granting summary judgment because she has satisfied her burden under the "modified" *McDonnell Douglas* framework. Again, we disagree.

Like the district court, we need not substantively address whether Bassett satisfied her initial burden to establish a prima facie case of race discrimination because, as discussed below, she has not carried her burden under the remaining *McDonnell Douglas* elements, which require (1) WLBT to "articulate a legitimate, non-discriminatory reason for its decision to terminate [Bassett]"; and (2) Bassett to demonstrate a fact issue regarding whether WLBT's reason, "while true, is only one of the reasons for its

---

[5] *See also Newbury v. City of Windcrest*, 991 F.3d 672, 676–77 (5th Cir. 2021) ("Although [*Bostock*] expanded the groups of individuals protected by Title VII, it in no way altered the preexisting legal standard for sexual harassment."); *Corley v. Mercedes-Benz U.S. Int'l, Inc.*, No. 21-11986, 2022 WL 2345808, at *3 n.4 (11th Cir. June 29, 2022) (unpublished) (rejecting, in a reverse discrimination case, the plaintiff's "argument that the *McDonnell Douglas* burden-shifting framework is no longer applicable in the light of" *Bostock*, which the court did not "read" as "overruling *McDonnell Douglas* or as establishing a new test for evaluating Title VII discrimination claims").

conduct, and another 'motivating factor' is [Bassett's] protected characteristic." *See Rachid*, 376 F.3d at 312 (citation modified).[6]

1

Bassett asserts that WLBT failed to articulate a legitimate, non-discriminatory reason for her termination. WLBT responds that its stated reason for firing Bassett—her use of "racially offensive language on air twice"—is sufficient to meet its burden.

An employer's burden to proffer a legitimate and non-discriminatory reason for an adverse employment action is "a burden of production, not persuasion." *Vaughn v. Woodforest Bank*, 665 F.3d 632, 636 (5th Cir. 2011). Firing an employee for making racially inappropriate comments is a sufficient non-discriminatory reason. *See id.* (holding that firing a White employee for making "inappropriate comments in the presence of employees and customers that created a perception of racial discrimination and uncomfortable environment due to lack of confidentiality" was a sufficient non-discriminatory reason). So are violations of company policy. *See Rachid*, 376 F.3d at 313. Moreover, "evidence that the employer's investigation merely came to an incorrect conclusion does not establish a racial motivation behind an adverse employment decision. Management does not have to make proper decisions, only non-discriminatory ones." *See Bryant v. Compass Grp. USA Inc.*, 413 F.3d 471, 478 (5th Cir. 2005).

---

[6] Bassett does not argue that WLBT's stated reason is pretext for discrimination. As a result, the "pretext alternative" under *McDonnell Douglas* is not addressed here. *See Rachid*, 376 F.3d at 312 (citation modified). Likewise, the parties do not address the final element of the modified *McDonnell Douglas* analysis: whether WLBT has shown "that the same adverse employment decision would have been made regardless of discriminatory animus." *See id.* (citation modified). Because, as discussed below, Bassett has failed to show a genuine factual dispute regarding whether race was a motivating factor in her termination, we also do not address the final element.

No. 25-60278

Here, WLBT asserts it fired Bassett for her use of racially offensive language on air twice—the second instance occurring just six months after she received a written warning for the first. This court has found the second *McDonnell Douglas* element satisfied in similar circumstances. *See Vaughn*, 665 F.3d at 636. Nevertheless, Bassett argues that WLBT has failed to meet its burden because it wrongly concluded that the language she used was, in fact, offensive. But even if WLBT "came to an incorrect conclusion" regarding the offensiveness of Bassett's on-air comments, this "does not establish a racial motivation behind [WLBT's] adverse employment decision." *See Bryant*, 413 F.3d at 478. Consequently, WLBT has satisfied its burden to articulate a legitimate, non-discriminatory reason for terminating Bassett's employment.

2

Bassett also argues that, even if WLBT adequately stated a legitimate, non-discriminatory reason for terminating her, there are genuine issues of material fact as to whether race was a motivating factor in her termination. She primarily relies on: (1) Fortenberry's testimony that there are "some things that [B]lack people can say that [W]hite people can't say"; (2) her historically positive employment record; and (3) her contention that "WLBT accepted [B]lack persons' opinions of the meaning of [the Phrase] over [W]hite persons' opinions." In response, WLBT asserts that Bassett's purported "facts" either mischaracterize the evidence or are irrelevant to the inquiry.

First, Fortenberry's deposition testimony is not sufficient to create a genuine factual dispute. As the district court found, Fortenberry did not admit discrimination. Rather, when speaking specifically about the Phrase, Fortenberry said it was "certainly not something you want to say on the air

whether you're [B]lack or [W]hite." He also made clear that "on [WLBT,] there are things [employees] can't say regardless of their race."

Second, that Bassett had a positive employment record *before* the events giving rise to her termination is irrelevant. The record reflects that just six months before she was fired for an offensive remark on air, she received a written warning for a different racially insensitive remark on air. Her historically positive "performance" does "not speak to [her] actions immediately preceding [her] termination—the actions that [WLBT] says caused [her] termination." *See Gobert v. Saitech, Inc.*, 439 F. App'x 304, 306–07 (5th Cir. 2011) (unpublished).

Third, Bassett's argument that "WLBT accepted [B]lack persons' opinions of the meaning of [the Phrase] over [W]hite persons' opinions" is unsupported by the record and, in any event, does not demonstrate that race motivated the decision to terminate her. As discussed, there is no dispute that WLBT received complaints from viewers and employees indicating they found language used by Bassett to be offensive. Those complaints came from Black and White viewers and employees alike. Even if WLBT was wrong in concluding Bassett's comments were offensive, "evidence that [WLBT] . . . merely came to an incorrect conclusion does not establish a racial motivation behind an adverse employment decision." *Bryant*, 413 F.3d at 478.[7]

---

[7] Bassett also argues that genuine factual disputes regarding WLBT's discriminatory motive exist based on a myriad of other irrelevant or conclusory "facts." First, she points to the existence of WLBT's Media Training Center, which primarily hires students from historically Black colleges and universities. But she cites no evidence suggesting that the Media Training Center has any connection to her termination. In fact, the program is "totally separate" from the WLBT newsroom, and it is directed by a person who had no part in Bassett's termination. *See Rios v. Rossotti*, 252 F.3d 375, 382 (5th Cir. 2001) (explaining that "statements by non decision makers, or statements by decision makers unrelated to the decisional process itself do not suffice to satisfy the Plaintiff's

No. 25-60278

None of Bassett's cited evidence creates a genuine dispute of material fact regarding whether race motivated WLBT's decision to terminate her employment. Rather, the evidence suggests she was fired for using language on air that WLBT concluded—after receiving numerous employee and viewer complaints—was racially offensive. The district court, therefore, did not err in granting summary judgment.

## IV

The judgment of the district court is AFFIRMED.

---

burden" (citation modified)). Second, Bassett argues discriminatory motive can be inferred from questioning by WLBT's attorney during Bassett's deposition, which "impl[ied] it would be appropriate" for Black people to say the Phrase, but not White people. She does not explain, however, how this questioning demonstrates what motivated *WLBT* to terminate Bassett's employment at the time it did so. Finally, Bassett's argument that "WLBT knew that [she] could not have meant the term in a racist manner because she was promoting a [B]lack person's product" is wholly conclusory and unsupported by record evidence. And "[c]onclusory allegations and unsubstantiated assertions" do not "satisfy the plaintiff's burden" to create a genuine factual dispute. *See Bellard*, 675 F.3d at 460.

12